Case No. 4,458.

The EMILY B. SOUDER.

[15 Blatchf. 185.] [1]

Circuit Court, S. D. New York. Aug. 23, 1878. [2]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
[2] [Modifying Case No. 4,455.]

Dorman B. Eaton, for libellants.
Welcome R. Beebe, for claimants.

WAITE, Circuit Justice. It is conceded that the Monterey was engaged to tow the Souder, and the only controversy is as to whether the engagement was for salvage or towage service. It is well settled, that, if there is no actual or probable danger, and the employment is simply for the purpose of expediting the voyage, such service is towage and not salvage. Care should be taken, in cases of this kind, not to establish a precedent which will tend to discourage merchant steamers from rendering assistance at sea when there is real or apparent danger, but it is equally important not to encourage claim for salvage remuneration when only towage service is required or contemplated.

In this case, there was no actual or apparent danger. The Souder was not in distress, and she did not represent herself so to be. Her signal did not indicate anything of the kind, and the master of the Monterey did not understand that it did when he bore off towards her. To use his own language, as reported by his engineer, he went "to see what was the matter." If, when he started, he thought there was distress, his mistake must have been corrected soon after he got to the vessel, for he says he hesitated about taking off the passengers "unless he" (the Souder) "were in actual distress." The request from the Souder to take off her passengers, indicated, in the clearest manner, her desire to expedite their arrival in New York. When this was declined, the next was to propose towage and negotiate about price. There is nothing to show that there was any other reason for this arrangement, than that which led to the application for the transfer of passengers. The weather was fine, but the vessel was proceeding slowly, because the wind was light. While she was nearer the shore than vessels making her voyage usually went, she was not in any actual or apparent dangerous proximity to it. She was new, staunch and strong. Her masts and sails were in good order. Although disabled as to her propeller, she had full use of the same motive power that had brought her in safety from St. Thomas. The cruising ground of pilots and tugs in search of business was not a great way off, and the prospect was fair that she could sail into port in less than twenty-four hours. All this was known to the master of the Monterey. When asked what he would charge to make the tow, his reply was, not that he would not take hold of her under a contract simply for towage, but that he did not know as he could take her in, and consequently could not make a bargain. He said, however, he would take hold and get her in, if he could. All the witnesses on the Souder say that this was accompanied by the further statement, that he would not charge more than was right, or words to that effect; but, whether that be so or not, it is clear, that he, in no manner whatever, indicated, that, if he did undertake the tow, his charge would be for salvage and not for towage. All the surrounding circumstances go to show, most unmistakably, that the master of the Souder did not suppose that, in what he was doing, he subjected himself or his vessel to a liability for salvage service. What he wanted was to expedite the delivery of his passengers in New York, and he did not, by word or deed, indicate anything else to the Monterey. For this purpose, when he found he could not get them on board the Monterey, the negotiation for towage began. In this connection, it must also be remembered, that, under ordinary circumstances, his vessel would soon be on the cruising ground of tugs seeking towage employment, where all the assistance he required could be obtained at customary rates.

In view of these facts, if the master of the Monterey expected to claim salvage remuneration, he should have so said at the time, in order that the Souder might determine whether she would accept his services on that condition. There is no pretence of any such notice, and on that account, clearly, there could have been no express contract for such service, and, in my opinion, no such service was in fact rendered. Towage only was wanted, and that was the only service rendered or accepted. In law, therefore, the Monterey can only claim reasonable compensation for what she has done in that way.

But, while the employment was for towage alone, it does not necessarily follow that the Monterey is confined, in her recovery, to an amount which would be considered a reasonable compensation for the same service by a tug fitted for and engaged in that kind of business. She is entitled to a reasonable remuneration for what she has done. Her service was an unusual one. The towage was not ordinary but extraordinary. It interfered with the business in which she was engaged. She went out of her way to see what was wanted. This involved delay, and delay increased the expenses of her voyage. To some extent it interfered with her business and incommoded her passengers. Under such circumstances, it is clear, that neither party could have understood that the ordinary charges for towing would be a sufficient remuneration for what was to be done. As the service was to be extraordinary, it is fair to presume that it was expected the compensation would be something more than

ordinary. This, not because the service was for salvage, but because of its unusual character as towage.

The testimony taken since the appeal has changed the case somewhat, in this particular, from what it was below. Several witnesses have been examined as to the ordinary price of towage and the value of the Souder. It now appears that the value of the vessel was not more than one-half of what was testified to below, and that, if the service had been performed by a tug sufficiently large and powerful to bring her in as expeditiously as the Monterey did, the charge would not have exceeded five or six hundred dollars. Under these circumstances, I think one thousand dollars ample compensation to the Monterey, both for the towage and the damage to her hawser.

As the recovery is upon a quantum meruit for work and labor done, and not for salvage service, interest is allowed at the rate of seven per cent., from August 26th, 1869.

The claimants having been successful, in this court, in reducing the claim of the libellants from salvage to towage, which is all that was asked in the answer, they are entitled to costs in this court. The libellants should recover costs in the district court.