## THE CARONDELET.[1]

### L'HOMMEDIEU v. THE CARONDELET.

*(District Court, E. D. New York. November 13, 1888.)*

SALVAGE—STEAM-SHIP AT WHARF—BURNING LIGHTER—TOWAGE INTO STREAM—TENDER.

A steamer was lying at a wharf, with steam up, when a lighter near by caught fire. A tug, at the request of the master of the steamer, took her into the stream, and held her there until the burning lighter had been removed, when she took her back to the wharf; the whole service occupying an hour and a

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

half.   Fifty dollars was tendered by the steamer as compensation for the serv-
ice.   *Held* that, while the service was a salvage service, the peril of the steamer
had been so small that $50 was a sufficient compensation; that libelant should
therefore have a decree for the $50 paid into court, and costs up to that time,
less the costs incurred since the tender.

In Admiralty.   Libel for salvage.

Libel by Samuel L'Hommedieu, owner of the steam-tug Ceres, against
the steam-ship Carondelet.

*Wing, Shoudy & Putnam,* for libelant.

*Butler, Stillman & Hubbard,* for claimants.

BENEDICT, J.   This is an action to recover salvage for services rendered
by the steam-tug Ceres to the steam-ship Carondelet, under the following
circumstances:   On the 22d day of September, 1887, the steam-ship Caron-
delet was lying at the end of pier 20 in the East river, fast by lines to
pier 20 and pier 19, substantially ready for sea.   At about 1 o'clock P.
M. of that day a lighter named the "Samuel Baker," lying on the side
of pier 20, loaded with cotton, caught fire.   The Carondelet at once
threw off all her lines, and the tug Ceres, having at the time come to the
bows of the steam-ship for the purpose of going into the slip to tow out
the lighter, was requested by the master of the Carondelet to take a line
from the steamer, and tow her into the river.   Accordingly the Ceres
took a line from the Carondelet, and towed her into the middle of the
river, and there held her until the burning lighter had been removed,
when she took her back to her place at pier 20.   The time occupied in
this service was from one and a half to two hours, all told.   It involved
no risk of any kind, or extra labor on the part of those on board the tug.
The libelants insist that the service was important, and requires a liberal
reward.   The claimants have made a tender of $50 as a sufficient award,
and have paid that sum into court with costs.   The ordinary price for
towage by this tug was $10 an hour.   No doubt the service was a sal-
vage service; it was a voluntary service rendered to a vessel in peril, and
was successful.   The amount of the salvage compensation must, how-
ever, be largely affected by the extent of the peril to which the steam-
ship was exposed at the time when she was towed away from the pier
by the tug.   This peril is reduced to the minimum by the proofs in the
case, which show that at the time when the Ceres took hold of the steamer,
the steamer had steam up, and could herself have moved away by her
own power in abundant time to avoid being set on fire by the burning
barge.   This is the controlling fact in the case, about which there is lit-
tle dispute in the testimony, and it reduces the peril of the steamer to
such an extent as to render the offer of $50 made by the claimants, in
my opinion, a sufficient salvage compensation for the services rendered.
The libelant may have a decree for $50 paid into court, and the costs up
to that time, less the costs incurred since the tender.