### THE BEACONSFIELD.

### HEIN v. THE BEACONSFIELD.

(District Court, S. D. Alabama. April 8, 1895.)

No. 708.

**1. SALVAGE SERVICES.**

Towing into the port of Mobile, a distance of 52 miles, a ship which had been partly dismasted, and had lost overboard a portion of her crew, but which at the time was in no danger, and was proceeding under partially rigged sails, *held* to be a salvage service, though of inferior merit, being rendered in a smooth sea, without danger to the towing vessel.

**2. SAME—COMPENSATION.**

$650 awarded to a steamer, delayed 28 hours on her regular trip, by towing into port, in a smooth sea and without danger, a partially dismasted vessel, in no danger when found, valued at $8,000.

This was a libel by Louis H. Hein, charterer of the Norwegian steamship Jarl, against the ship Beaconsfield, to recover compensation for alleged salvage services.

Mr. Gregory, L. Smith, and H. T. Smith, for libelant.

Pillans, Torrey & Hanaw, for claimants.

TOULMIN, District Judge. This is an action to recover for salvage service alleged to have been rendered by the steamer Jarl to the ship Beaconsfield, on the 13th of October, 1894. The

service consisted in towing the ship about 52 miles from off the bar of Mobile Bay into anchorage at Ft. Morgan, inside the bay. The time occupied in the tow was some 9 or 10 hours, and involved no risk or extra labor on the part of the steamer. The weather was good and the sea smooth. The master of the steamer says that "the wind was northeast, but was not blowing too much, and the sea was from the northeast, but was not much." On the 6th and 7th of October the ship had encountered a storm in which it was partly dismasted, and also lost five of the crew overboard. At the time she was taken in tow by the steamer, she had on her in use the mizzenmast, upper and lower top foresail, and a foresail, but the foresail was not full size. From the point where she lost her rigging to the point where she was picked up by the steamer she had proceeded 342 miles. She was not in any immediate danger when taken in tow by the steamer. She had sufficient crew to handle her with such sails as she then had on her. She had aboard plenty of provisions and water to last several weeks, and her hull was in good condition, tight and stanch. She was at that time making but little headway, because of the adverse wind then blowing. There is some conflict in the evidence as to whether she was under command or could have been handled in the condition she was in. But a preponderance of the evidence shows that she could handle herself, and could have come into port without assistance, except with a considerable adverse wind blowing; and that, at the time she was taken in tow by the steamer, she was making some, but slow, headway. The evidence satisfies me that the danger to which she was exposed was very slight. She had been in peril during a hurricane, and had been partly dismasted, and had lost five of her crew, but she had passed through her peril, and had proceeded some 340 miles on her voyage towards the port of Mobile, whither she was destined, and when taken hold of by the steamer was within about 52 miles of that port. The value of the steamer was about $32,000. The value of the ship does not clearly or very satisfactorily appear from the evidence, but I should judge it was about $8,000.

"It is the value of the property which is restored to the owners that is to be considered, and of which a proportion is to be awarded as salvage in salvage cases, and not the original value imperiled." Compagnie Commerciale de Transport à Vapeur Francaise v. Charente Steamship Co., 9 C. C. A. 292, 60 Fed. 921. The steamer was engaged in the fruit-transporting trade between Mobile and Bocas Del Toro, and was proceeding on one of her regular trips from Mobile out when spoken by the ship and asked to give her a tow. She promptly responded, and, without danger or difficulty, rendered the desired assistance. While the actual service rendered occupied only 9 or 10 hours, the actual time lost by the steamer's deviation and subsequent delay was 28 hours. A deviation is a proper and important element to be considered in rendering a salvage award, and the nature of the salving ves-

sel's employment, the inconvenience, expense, and loss that arise from leaving a regular trip, are things, I think, to be noticed in determining the amount of her award. The Bay of Naples, 44 Fed. 90. The ship was not without the prospect of other efficient means of assistance. She was in or near the usual track of vessels going in and out of the ports of Mobile and Pensacola, and was within 10 to 20 miles of Mobile tugs seeking towage employment in and out of Mobile Bay. The case is one of salvage service, but its circumstances are wholly devoid of those elements which go to make up a highly meritorious service in the salvors. The Carondelet, 36 Fed. 714; The Jarlen, 43 Fed. 176; The Emily B. Souder, 15 Blatchf. 185, Fed. Cas. No. 4,458. Six hundred and fifty dollars is, in my opinion, a sufficient salvage compensation to be awarded in this case. A decree will be entered accordingly.