## THE GRACE DOLLAR.

(District Court, N. D. California. August 2, 1900.)

### No. 11,616.

1. SALVAGE—CONDUCT OF SALVORS—PROXIMATE CAUSE OF DANGER—EVIDENCE.
   As the claimant was crossing the bar at the entrance of a harbor she received a signal of one whistle from libelants' tug, responded with a single whistle, immediately ported her helm, and, after proceeding two or three minutes on her course, struck a shoal in rough water, by reason of which her rudder post was broken, and she signaled for assistance. After getting off the bar, the claimant, being in a helpless condition, was washed on the bar a second time, before the tug went to her assistance, and the latter even then did not come nearer than 400 feet, because of the shallowness of the water. Thereupon the claimant launched her own boat, and carried a line to the tug, whereby the latter was able to give her hawser to the claimant, and to tow her to a place of safety and for repairs; the service lasting about two hours. *Held*, that the channel being wide enough for two vessels to pass, and the claimant, in any event, having the right of way, because of her having commenced to cross the bar first, her deviation from her course was an error of navigation, which, rather than the signal of the tug, was the proximate cause of her stranding, and that therefore the service rendered by the tug was a salvage service, for which the libelants were entitled to compensation.

2. SAME—AMOUNT OF RECOVERY.
   A steamer of the value of $40,000, being without rudder, and aground in shoal water in a rough sea, was towed by libelants' tug to a place of safety; but neither the tug nor any of her crew was exposed to the slightest danger in performing such service, and the ordinary charge for the towage of the vessel would have been $175. *Held*, that the libelants were entitled to recover $1,000 as salvage, three-fourths of which sum should go to the tug, and the balance to her master and crew, in proportion to their wages.[1]

Chas. A. Naylor, for libelants.
Andros & Frank, for claimant.

DE HAVEN, District Judge. This action was brought by the owner and master of the steam tug Columbia, in behalf of themselves "and all others entitled," to recover compensation for an alleged salvage service rendered to the steamer Grace Dollar. The case is this: On the 31st of August, 1898, the Grace Dollar, bound for Coos Bay, was crossing the bar of that harbor, and while so proceeding received a signal of one whistle from the Columbia, then coming out,

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

but still in smooth water, near the end of the jetty, and about one-third of a mile distant from the Grace Dollar. The latter responded with a single whistle, immediately ported her helm, and, after proceeding two or three minutes on her course, struck a shoal in rough water outside of the end of the jetty. There was not much wind, but the sea was breaking on the bar; that is, was breaking in the channel forming the entrance to the harbor. The tide was about flood, and the Grace Dollar was coming in with a following sea. The Columbia, after having given her first signal, slowed down, reversed her engines, and stopped before she reached the end of the jetty, but did not give any signal to indicate this change of movement on her part. When the Grace Dollar struck, her rudder post was broken, and her master at once signaled for assistance. The Columbia passed out over the bar, and immediately returned. The Grace Dollar by this time had gotten off of the sand bar, and was anchored in the channel. She was, of course, in a somewhat helpless condition, on account of the loss of her rudder. The Columbia did not come near enough to pass her a line, and the Grace Dollar went on the shoal a second time. The Columbia then backed up to within about 400 feet of the stranded steamer, and, finding only 12 feet of water, stopped; and her master, deeming it dangerous to launch a boat, blew a signal for the life-saving crew, stationed about $3\frac{1}{4}$ miles distant. The crew of the Grace Dollar, without waiting for assistance from the life-saving station, immediately launched their own boat and carried a line to the Columbia. The latter vessel was thus enabled to give her hawser to the Grace Dollar, and, with the assistance of the latter's engines, succeeded in getting her into the channel, and then towed her to Marshfield, where she was put on the mud flats. This service occupied about two hours. After this the Columbia towed her to another part of the harbor for repairs, and, when these were made, back to the flats for the purpose of having her rudder shipped, and then towed her off of the flats again. This latter service was of little value, and cannot be regarded as a salvage service, or as anything different from the ordinary work of a tugboat.

The right of the libelants to recover in this action is opposed by the claimant mainly upon the ground that the stranding of the Grace Dollar was occasioned by the fault of the master of the Columbia in signaling his intention to go out over the bar while the Grace Dollar was coming in, thus making it necessary for the latter, in order to avoid the possible chance of collision on the bar, to make the change of course which resulted in her going upon the shoal, on which she grounded. The argument in support of this proposition is, in substance, that the entrance to Coos Bay is a narrow and dangerous channel, in which it is not safe for two vessels to attempt to pass when the sea is breaking as it was upon that day; that, as the Grace Dollar commenced to cross the bar first, she had the right of way, and was entitled to the entire channel in which to navigate, and the Columbia should have refrained from giving the signal which in effect deprived her of this right, by leading the master of the Grace Dollar to believe that it was necessary for him to change his course in order to give the Columbia room to pass; that upon the facts the case is precisely the

same as if the Columbia had actually kept on as indicated by her signal, and thus compelled the Grace Dollar to change her course so as to avoid collision in the narrow channel. The answer to this argument is that the main fact upon which it depends for support is not established by the evidence. The great preponderance of evidence is to the effect that the entrance to Coos Bay was not, at the time referred to, in such condition that the two vessels could not have passed each other in safety. It is true that the Columbia, after giving the signal referred to, did actually slow down so as not to meet the Grace Dollar in rough water, or, in seaman's phrase, "on the bar"; but this fact, while showing great caution upon the part of the master of the Columbia, is not sufficient to overcome the evidence tending to show that the channel was wide enough to have permitted the passage of both vessels without danger to either. The channel which forms the entrance to Coos Bay is not long, and is about one-eighth of a mile wide; and it is reasonably clear from the testimony that two vessels can pass each other at all times without the slightest danger of collision, except under most unusual conditions of wind and sea,—conditions not present at the time referred to. In any event, when the master of the Grace Dollar heard the signal of the Columbia, he was not required to so far deviate from his course as to get out of the channel and into the shoal water where his steamer struck, and his doing so was an error of navigation. This error of navigation on his part, and not the signal given by the master of the tug Columbia, was the proximate cause of the stranding of the Grace Dollar. This conclusion reached, it is clear that the service rendered by the Columbia in assisting the Grace Dollar off the shoal on which she grounded, and in towing her to Marshfield for repairs, was a salvage service, for which the libelants are entitled to receive proper compensation. The only question of difficulty in the case is to determine the amount to be allowed. The Grace Dollar, without rudder and aground as she was in shoal water at the mouth of the entrance to Coos Bay, with the sea breaking, was in a position of peril, from which she might not, unaided, have been able to escape, and it is admitted that she was of the value of $40,000. The libelants claim that they are entitled to an award of at least one-third of the value of the Grace Dollar, and the court has been referred to numerous cases in which a proportionate amount as large, and in some instances greater, has been awarded to the salvors of rescued property. Each case must, however, be decided in view of its own peculiar facts, and the only aid to be derived from adjudged cases is by a consideration of the general principles upon which they were decided. These principles appear to be well settled. It may be stated as the general rule in fixing salvage compensation that:

"The value of the property saved, the degree of peril from which it was delivered, the risk of the property, and especially of the persons of the salvors, * * * the severity and duration of their labor, the promptness of their interposition, and the skill exhibited by them, are all to be considered." The Versailles, 1 Curt. 353, Fed. Cas. No. 6,365.

See, also, The Blackwall, 10 Wall. 1, 19 L. Ed. 870; The Clifton, 3 Hagg. Adm. 118; Pope v. Sapphire, Fed. Cas. No. 11,276; Hand v. The Elvira, Gilp. 60, Fed. Cas. No. 6,015.

These cases also show that the compensation to be allowed the salvor is measured by a liberal scale, so as to encourage others to incur danger to themselves and property in going to the relief of vessels in distress, and surrounded by perils from which they might not be able to escape without assistance from others. But, while the compensation is to be liberal, it must not be extravagant, in view of the actual service rendered and the actual danger encountered. In the language of Judge Hopkinson in the case of Hand v. The Elvira, above cited:

"We must not teach a salvor that he may stand ready to devour what the ocean may spare. He must not be permitted to believe that he brings in a prize of war, and not a friend in distress. If he has afforded his assistance to the distressed in a proper spirit, he will be satisfied with a just and fair remuneration for the labor, hazard, and expense he has encountered in the service; and it is only a proper spirit that we should seek or desire to satisfy. To this measure of compensation the judge, governed by a liberal policy, will add a reasonable encouragement, which the generous and humane will hardly need, to prompt men to exertions to relieve their fellow men in danger and distress. But we must remember that the policy of the law is not to provoke or satisfy the appetite of avarice, but to hold an inducement, to such as require it, to make extraordinary efforts to save those who may be encompassed with perils beyond their own strength to subdue."

In rendering the service for which salvage is claimed in the present case, no extraordinary effort was put forth by the Columbia, and neither the tug nor any of her crew was exposed to the slightest danger in making fast to the Grace Dollar and towing her to a place of safety. In fact, the master of the Columbia declined to permit his crew to incur the risk of launching a boat for the purpose of carrying a line to the distressed steamer. The evidence also shows that the ordinary charge for towing a vessel of the size of the Grace Dollar, and loaded as she was, from the place where she went aground to Marshfield, was about $175. In view of all the facts, and governed by the general principles declared in the cases above cited, the judgment of the court will be that libelants are entitled to recover the sum of $1,000, to be divided as follows: Three-fourths of that sum to the tug Columbia, and the remaining one-fourth to her master for himself and crew, and to be divided between them in proportion to their wages; the libelants to recover costs. The cross libel will be dismissed.