## THE J. C. PFLUGER.

### (District Court, N. D. California. April 5, 1901.)

### No. 12,210.

1. SALVAGE—NATURE OF SERVICE—SALVAGE OR TOWAGE.

The German bark Pfluger, after leaving San Francisco on a voyage, met with a sudden squall, which carried away her mainmast and mizzen topmast, fore-topsail and fore royal yard, injuring her decks to such extent that they leaked whenever a sea was shipped. She abandoned her voyage, and made for Santa Barbara, 200 miles distant. After reaching a point in Santa Barbara channel 12 miles from port, about 11 o'clock at night, she met a steamer, which, at request of her master, who, stated that he was not in peril, but desired to expedite his arrival to communicate with the agents, towed the bark into port, there being a dead calm. Held, that the service was not one of salvage, but of towage only, and to be compensated as such, the bark being in no immediate peril, nor so disabled as to justify any reasonable apprehension for her safety if left to her own efforts in making port.

2. TOWAGE—COMPENSATION FOR VOLUNTARY SERVICE—AMOUNT.

Where a steamer not engaged in the towing business, nor fitted therefor, interrupts her voyage to tow a partially disabled vessel into port, such facts are to be considered in fixing the amount of her compensation for the service, and she is entitled to a larger award than would amount to a reasonable compensation for the same service if performed by a tug engaged in the business. In such case, where a steamer valued at $25,000 was delayed in her voyage eight hours, she was held entitled to an award of $350.[1]

3. SAME—DISTRIBUTION OF AWARD.

Where a steamer interrupted her voyage to tow a partially disabled bark into port, for which she was awarded compensation on a quantum meruit as a towage, and not as a salvage, service, the master and crew are entitled to no part of such award.

In Admiralty. Suit to recover for salvage services.

Cambell & Metson, for libelants.

H. W. Hutton and Robert B. Gaylord, for interveners.

Page, McCutchen, Harding & Knight, for claimants of cargo.

Andros & Frank, for claimants of bark.

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

DE HAVEN, District Judge. The libel in this action was filed by the L. E. White Lumber Company, a corporation, in behalf of itself and co-owners of the steamer Greenwood, and her master and crew, to recover for salvage services alleged to have been rendered by that steamer to the bark J. C. Pfluger. The master and crew of the Greenwood have also filed a libel of intervention, in which they allege that they are entitled to a proportionate share of whatever salvage may be awarded in the action. The following are the facts, out of which the case arises:

The bark J. C. Pfluger left San Francisco on July 11, 1900, bound for Queenstown, and at 5 o'clock on the morning of July 12th her mainmast and mizzen topmast, fore-topsail, and fore royal yard, were carried away by a whirlwind or squall of great violence; and in the answer to the libel, it is conceded that the vessel's decks were thereby injured to such extent that they leaked whenever a sea was shipped. In consequence of this disaster, the voyage was abandoned, and the vessel with foresail, fore-topmast staysail, spanker, and jibs set, made for Santa Barbara, distant 200 miles or thereabouts, and at 11 o'clock on the night of July 15th succeeded in reaching a point in Santa Barbara channel 12 miles from the port of Santa Barbara. She was carrying at that time, as required by law, two red lights, set "in a vertical line one above the other," indicating that she was not under command. Article 4, Act Aug. 19, 1900 (26 Stat. 322). These lights were seen by the steamer Greenwood, bound from Los Angeles to San Francisco, and thereupon that steamer made a slight deviation from her course, for the purpose of meeting and rendering to the vessel exhibiting them such assistance as might be required, and the two vessels were soon within hailing distance of each other. The master of the J. C. Pfluger hailed the Greenwood, and requested that his vessel should be towed into the port of Santa Barbara. The Greenwood lowered a boat, and her master went on board the disabled bark, and was informed by her master that his vessel was not in peril, and that his only reason for wishing to be taken in tow was that he might be able to communicate at the earliest moment with his agents at San Francisco. The master of the Greenwood consented to tow the bark to Santa Barbara, but there was no agreement as to the compensation which the Greenwood should receive. The Greenwood gave her hawser to the J. C. Pfluger at about 12 o'clock midnight, and slowly towed her to an anchorage in the port of Santa Barbara. The time consumed in the towage was six hours, during all of which time there was a dead calm upon the sea, and when the service was ended the Greenwood immediately resumed her voyage. Allowing for the time required to return to the point where she first saw the lights of the bark, the Greenwood was not delayed more than eight hours in reaching San Francisco, her port of destination. The J. C. Pfluger was sold for the sum of $15,250, under process issued in this action, and that may be said to have been her value when towed into Santa Barbara. The value of the Greenwood was $25,000.

1. The Greenwood is entitled to compensation for the services rendered by her, and in fixing the amount to be recovered it is neces-

sary to determine whether, in what she did, she performed a salvage, or only a towage, service for the J. C. Pfluger, since the basis of recovery is different in the two cases. In a case of simple towage only a reasonable compensation is allowed as upon a quantum meruit (The Emily B. Souder, 15 Blatchf. 185, Fed. Cas. No. 4,458; The Egypt [D. C.] 17 Fed. 359); while in a case of salvage the award is made upon a more liberal scale, and the salvor recovers an amount which includes not only the reasonable value of his services, and the expenses incurred by him in the undertaking, but, in addition thereto, a reward or bounty given for the purpose of encouraging others to go to the relief of vessels in distress and "encompassed by perils beyond their strength to subdue." Hand v. The Elvira, Gilp. 60, Fed. Cas. No. 6,015; Murphy v. The Suliote (C. C.) 5 Fed. 99; The Egypt (D. C.) 17 Fed. 359; The Grace Dollar (D. C.) 103 Fed. 665. Towing a vessel into a harbor may or may not be a salvage service. If the vessel towed was by this means aided in escaping from a present or prospective danger, the service will be regarded as one of salvage, and the towage as merely an incident. If, upon the other hand, the vessel thus assisted was not encompassed by any immediate or probable future peril, such service will be treated as one of towage merely, and compensated as such. It was said by Dr. Lushington (The Charlotte, 3 W. Rob. Adm. 68) that, in order to constitute a salvage service, it is "not necessary that the distress should be actual or immediate, or the danger imminent and absolute; it is sufficient if, at the time the assistance is rendered, the ship has encountered any damage or misfortune which might possibly expose her to destruction if the service were not rendered." In McConnochie v. Kerr (D. C.) 9 Fed. 50, Judge Brown, in pointing out the distinction between a salvage and towage service said:

"A salvage service is a service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger, either present or to be reasonably apprehended. A towage service is one which is rendered for the mere purpose of expediting her voyage, without reference to any circumstances of danger."

In the case of The Emily B. Souder, 15 Blatchf. 185, Fed. Cas. No. 4,458, Chief Justice Waite stated the law upon this point as follows:

"It is well settled that, if there is not actual or probable danger, and the employment is simply for the purpose of expediting the voyage, such service is towage, and not salvage."

Under the plain and well-settled rule declared in the foregoing cases, whether a particular service was one of salvage or towage is always a question of fact to be ascertained from a consideration of the circumstances under which the court shall find the service was rendered; and, unless the evidence shows that the vessel towed was thereby assisted in getting safely away from some actual or apprehended peril, the case is not one in which salvage has been earned. The facts shown by the evidence in this case have already been stated, and upon consideration of these my conclusion is that the service rendered by the Greenwood to the J. C. Pfluger was only a towage service. The bark was in no immediate peril, and was not disabled to such an extent as to justify any reasonable apprehension

for her safety in the future if left to her own unaided efforts in making port. It is true, she was partly disabled, and by reason thereof her ability to make speed had been greatly impaired, but she was still able to carry sufficient sail to make headway against any wind or sea she was likely to encounter. She had sailed a distance of at least 200 miles in her then condition, and there is no reason to believe would not have been able to reach in safety the port of Santa Barbara, from which she was only 12 miles distant. Under these circumstances it is clear that the assistance the bark received from the Greenwood did not deliver her from a present or from an anticipated future peril, but only enabled her to more quickly reach the port to which she was bound. It follows from this view that the Greenwood is only entitled to recover the reasonable value of the services performed by her. When, as in this case, a steamer not fitted for nor engaged in the business of towing performs such a service, thereby delaying, and necessarily increasing the expenses of, the voyage upon which she is bound, the rule laid down in the case of The Emily B. Souder, 15 Blatchf. 185, Fed. Cas. No. 4,458, requires that such facts shall be taken into consideration in fixing the value of the service, and that the recovery therefor should not be confined "to an amount which would be considered a reasonable compensation for the same service by a tug fitted for and engaged in that kind of business." "Under such circumstances," said the court in that case, "it is clear that neither party could have understood that the ordinary charges for towing would be sufficient compensation for what was to be done." See, also, the case of The Viola (C. C.) 52 Fed. 172, in support of the same proposition. The rule just cited is a reasonable one, and in applying it to the facts of this case I find that the sum of $350 will remunerate the Greenwood for the loss of time and the labor and expense incurred by her in towing the J. C. Pfluger into Santa Barbara.

2. The only question that remains relates to the distribution of the amount recovered, and, in my opinion, the owners of the Greenwood are entitled to the entire sum. Her master and crew performed only the ordinary duties for which they were employed on that vessel, and there is no rule of law which gives them the right to a share of the judgment recovered in this action. In the case of The Emily B. Souder, supra, where, as in this case, the recovery was upon a quantum meruit for towage, the master and crew of the vessel rendering the service were not awarded any share of the judgment. If the case were one of salvage, the rule would be different. In such a case, although it is shown that the master and crew of the salving vessel performed at the time only their ordinary duties as seamen on such vessel, they are, nevertheless, entitled to share in the award upon principles peculiar to the law of salvage. The New Orleans (C. C.) 23 Fed. 909; Compagnie Commerciale De Transport a Vapeur Francaise v. Charente S. S. Co., 9 C. C. A. 292, 60 Fed. 921. Let a decree be entered awarding the sum of $350 and costs to the libelant. The libels of intervention filed by the master and crew will be dismissed.