## THE CITY OF PUEBLA.

### (District Court, N. D. California. April 26, 1907.)

### No. 13,512.

**1. SALVAGE—RIGHT TO COMPENSATION—SERVICES NOT OF BENEFIT.**

Where a steamer took a line from another which had become disabled at sea by the breaking of her propeller, but when it immediately parted went on her way, leaving the disabled vessel no better off than before, she is not entitled to share in the salvage award on the subsequent rescue of the disabled vessel by others.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, § 30.]

**2. SAME—AMOUNT OF COMPENSATION—TOWING DISABLED VESSEL AT SEA.**

The passenger steamer Puebla, with 185 passengers on board, broke her propeller shaft on December 30th, when 35 miles off the Oregon coast. There was a heavy sea, and her few sails only enabled her to keep off the shore. During the next 24 hours she drifted 21 miles, and was then met by the steamer Chehalis going northward, which undertook to tow her to San Francisco, and did so, with the assistance of the steamer Norwood, which joined her the next day at her request. The time required to reach San Francisco was about 3½ days after the service commenced. The wind had moderated, and the Puebla was not in any immediate danger when taken in tow; but there was imminent danger of bad weather at that season of the year, although none was encountered during the towing. Her salved value with cargo and pending freight was about $310,000. The Chehalis was worth $100,000, and she had 8 passengers. The Norwood was worth $121,000. *Held*, that the Chehalis was entitled to an award of $10,500 and the Norwood $9,500, to be divided three-fourths to the owners and one-fourth to the crews.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, § 81.
Awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

Frank & Mansfield, for libelants and intervener.
Page, McCutchen & Knight, for respondent.

DE HAVEN, District Judge. This is an action by the owners of the steamers Chehalis and Norwood, and the owner of the steamer Charles Nelson, as intervener, in behalf of themselves and the officers and crews of said steamers, to recover compensation for salvage service alleged to have been rendered by these vessels to the steamer City of Puebla. The case is this: On the 30th of December, 1905, the City of Puebla, a passenger steamer of 3,000 tons burden, on her voyage from Puget Sound to the city of San Francisco, when at a point 35 miles off the Oregon coast, a little north of the Columbia river, broke her propeller shaft, and was thus disabled so that she could not

use her steam power. There was a strong northwest wind and a heavy sea at the time; the few sails carried by her were immediately set, and with these her master was able to keep her off shore, but she could make little headway. About an hour after the accident she was overtaken by the Charles Nelson, and after some delay the Puebla, upon a second attempt, succeeded in passing a hawser to her; but it parted immediately, and the Charles Nelson proceeded on her way. The testimony of the master of the Charles Nelson as to the service rendered by that vessel is, in substance, as follows:

"The City of Puebla lowered a boat and ran another line to us. This line we got aboard and made fast. This occupied us four hours, owing to the heavy seas. We tried to tow them for about half an hour, but, the line being small and the seas so heavy, it parted. * * * After the last line parted, it was going on night, and our own ship in poor condition. Seeing no chance of assisting her any further, I motioned to the captain I would have to leave. I notified the Whittier of the condition of the Puebla and also notified the Pacific Coast Steamship Company's Queen."

This was all that was done by the Charles Nelson. Neither the Whittier nor the steamer Queen rendered any assistance to the Puebla. During the 24 hours following the accident, the Puebla drifted 21 miles to the southard, and only made 7 miles heading off shore to the westward, and she was then met by the steamer Chehalis bound north with passengers and freight, on a voyage from San Francisco to Gray's Harbor. The Puebla was flying signals of distress, and her master requested the Chehalis to tow his vessel to San Francisco. This the Chehalis consented to do, and the Puebla lowered her boat, and in a short time succeeded in passing a small line to the Chehalis, to which the latter bent her towing hawser, which was by this means taken on board the Puebla and made fast. The wind had moderated, the sea was not rough, and the Puebla was not in imminent danger at this time. The peril to which she was exposed was the probability of meeting with stormy weather, which at this season was very likely to occur, and which she was in no condition to withstand for any great length of time. Fortunately such weather was not in fact encountered during the time the Puebla was being towed into the port of San Francisco; but, if storms or adverse winds had been met, the service undertaken by the Chehalis would have been rendered difficult, and in some degree dangerous. Indeed, it may be said to be a fact so well known as to be a matter of common knowledge among seafaring men that, in towing a disabled vessel at sea, great care is required, even under favorable conditions of weather, to guard against the dangers incident to such employment. The Chehalis commenced towing the Puebla at 7:30 p. m. December 31, 1905, and at 4 o'clock p. m. on the afternoon of the next day she met the steamer Norwood bound north on a voyage from San Francisco to Gray's Harbor. The Chehalis with her tow was then only making three miles an hour, and her master signaled to the Norwood for assistance, which the latter was willing to render; but it was then so near dark that nothing could be done by the Norwood except to stand by during the night. This she did, and, at 8 a. m. on the following morning passed her hawser to the Chehalis, and the two vessels proceeded toward the port of San Francisco with the Puebla in

tow, where they arrived with their tow on the morning of January 4, 1906. The Puebla had on board at the time of the accident to her propeller shaft 185 passengers. In her salved condition she was of the value of $225,000. The value of her cargo and freight pending was $86,488. The steamer Chehalis was worth $100,000, and she had on board eight passengers. The steamer Norwood was of the value of $121,000.

1. Such being the facts, it is clear that the libel of the Charles Nelson must be dismissed. The claim which she makes is not, as argued in behalf of her owners, within the rule followed in the case of The Strathnevis (D. C.) 76 Fed. 855, and cases there cited, which under some circumstances allows one who has contributed to the success of a salvage service, finally completed by others, to share in the salvage award. It is undoubtedly the law, as stated in that case, that "when a vessel has been actually rescued from a situation of peril, all who have contributed at any stage of the rescuing service are entitled to a share of the reward"; and "when salvors are prevented by stress of weather, fog, or darkness, or other circumstances beyond their control, from rendering further assistance, and there has been no willful disregard of duty on their part toward the imperiled ship, there should be no forfeiture" of the right to salvage. But this rule can have no application, unless the vessel claiming the salvage reward rendered assistance at some stage of the rescuing service which in some way contributed to the final safety of the rescued ship. Salvage is defined as:

"The reward allowed for a service rendered to marine property, at risk or in distress, by those under no legal obligation to render it, which results in benefit to the property if eventually saved." Hughes on Admiralty, p. 127.

The Charles Nelson, as appears from the facts above stated, did nothing which resulted in benefit to the Puebla, nothing which either directly or indirectly contributed to the success of the salvage service which was afterwards undertaken and completed by the Chehalis and Norwood, and she is therefore not entitled to recover in this action.

2. It is not disputed that the Norwood and Chehalis are entitled to salvage compensation for the services rendered by them, and the only question is as to the amount which should be allowed. The principle upon which courts of admiralty proceed in this class of cases is well settled, and is stated by Mr. Justice Bradley in Murphy v. The Suliote (C. C.) 5 Fed. 99, in the following language:

"The amount of salvage that ought to be allowed for the services performed depends on several considerations, as: First, the extent and danger of the services; secondly, the risk to which the vessels and other property employed in the service were exposed; thirdly, the value of the property saved, and the risk of destruction by which it was imperiled."

In the case of The Grace Dollar (D. C.) 103 Fed. 665, the court said:

"The compensation to be allowed the salvor is measured by a liberal scale, so as to encourage others to incur danger to themselves and property in going to the relief of vessels in distress, and surrounded by perils from which they might not be able to escape without assistance from others. But, while the compensation is to be liberal, it must not be extravagant, in view of the actual service rendered and the actual danger encountered."

The general rule as above stated is plain, but in practice it is not possible to accurately measure the value of a salvage service, and much therefore is necessarily left to the discretion of the court in fixing the amount of a salvage award; and in reaching its conclusion the court can derive but little assistance from reported cases. Each case depends upon its own particular facts, and in addition to this it may be said that what may to one judge seem a proper allowance may be either much more or much less than another would award upon substantially the same facts.

Upon consideration of the evidence, my conclusion is that the owners of the Chehalis are entitled to recover for themselves and the master and crew of said steamer the sum of $10,500, with interest from January 4, 1906, until paid, and the owners of the Norwood are entitled to recover for themselves and the master and crew of said steamer the sum of $9,500, with interest thereon from January 4, 1906, until paid; that said sums be apportioned as follows: Three-fourths to the owners, and one-fourth to the masters and crews of the vessels in proportion to their wages. The case will be referred for the purpose of ascertaining and reporting the several amounts to which the masters and members of the crews of said vessels are entitled. The libel of the Charles Nelson will be dismissed with costs, and the other libelants will recover costs.

Let such decree be entered.