## BOND et al. v. A. H. BULL S. S. CO.

(District Court, S. D. Texas. July 3, 1926.)

**I. Salvage ⬡18.**

Where a service is really one of salvage, the ship cannot deprive the crew of their salvage rights by contract.

**2. Salvage ⬡18—Crew cannot claim salvage award for service rendered by the ship under contract for towage, where no personal salvage service was rendered.**

A crew cannot take advantage of a situation created by contract, which would not have arisen but for the contract, to claim an award for salvage, where no personal service is rendered by the crew, and no single element of personal salvage from the standpoint of the crew enters into the case.

**3. Salvage ⬡16—Crew of towing tug held not entitled to award for salvage services, where services were contracted for as towage.**

Where the owner of a tug contracted to tow a steamship from a bar on which she was stranded, the contract expressly providing that it was for towage, and not salvage, and the work was done in 18 minutes without danger to tug or crew, and they did nothing beyond their regular work, held, that they were not entitled to an award for salvage services.

In Admiralty. Suit by Ernest Bond and others against the A. H. Bull Steamship Company, owner of the steamship Eleanor. Decree for respondent.

W. E. Price, of Galveston, Tex., for libelant.

Stewart, Damiani & Harris, of Galveston, Tex., for respondent.

HUTCHESON, District Judge. This is a suit for salvage services claimed to have been rendered the steamship Eleanor, a vessel owned by the Bull Steamship Company, by certain members of the crew of the Freeport Sulphur No. 1. Neither the owner of the ship nor its officers are suing. The facts are that the Eleanor started to sea, and was stranded on the bar off Freeport, Tex., and was unable with her own power to get off the sand; that the bottom of the bar where she was aground

was sand and mud, and the reason she could not get afloat was that she was held against the edge of the channel by the current.

The captain of the vessel testified that the vessel went aground due to a freshet; that the weather was good; that he did not regard his vessel as being in any danger; that after the first night, being aground and un-able to get off, he called for assistance, and made a contract with the Freeport Sulphur Company, owner of the Freeport Sulphur No. 1, that they would pull on him and try to get him off. If they got him off, they were to get $400. If they failed, they were to get nothing. This contract was in writing, and expressly stipulated that the service was not a salvage service; that the payment would be merely for towage; and it further stipulated that, if there was any salvage claim made by any of the crew, the Freeport Sulphur Company would protect the ship against such claim.

The Freeport Sulphur No. 1 was equipped with a powerful towing machine. It anchored in the middle of the channel and in about 18 minutes had pulled the Eleanor clear. No danger was encountered by either the Freeport Sulphur No. 1 or any of the crew; no member of the crew of the Freeport Sulphur went aboard the Eleanor, and members of the crew of the Eleanor tied the lines on her.

Libelants contend that, though the services were performed without risk or danger to themselves or to the vessel, the Eleanor was in fact in danger, because stranded beyond the jetty, of being, in case of high seas or wind, dashed thereon and injured, and that the service was a salvage service. The Eleanor contends that she was never in any danger, that she made the contract to be pulled off in order to make time on her voyage, and not because she was in danger, and both because of the facts and because of the contract she owes nothing for salvage.

That the case, if it presents a salvage service at all, presents one of the lowest order, is plain, even apart from the fact of the contract. What effect should be given the contract is disputed by the litigants. Libelants claim that the contract is evidence of an attempt to unjustly deprive the crew of their salvage rights, and that in itself it is an admission that the service was a salvage service. The respondent replies that the contract was a mere towage contract, no cure, no pay, and that the Freeport Sulphur Company had the right to make the contract, and to perform it with the members of its crew, who were paid their regular salaries, for doing only their regular work, without subjecting the vessel served to a salvage claim.

[1] The general principles are clear; where the case is really one of salvage, the ship cannot deprive the crew of their salvage rights by contract. The Olockson (C. C. A.) 281 F. 690; The Lowther Castle (D. C.) 195 F. 604, where it is said: "Salvage goes beyond quantum meruit, and personal services rendered in salvage are not under the control of the owner of the vessel"—citing, among others, The J. C. Pfluger (D. C.) 109 F. 93.

[2] On the other hand, a towage contract made, stipulating against salvage, cannot create salvage rights which do not in fact exist. Nor can a crew take advantage of a situation created by contract, which would not have arisen but for the contract, to claim an award for salvage, where no personal service is rendered by the crew, and no single element of personal salvage from the standpoint of the crew enters into the case.

In short, while it will not do to say the master of a vessel in danger or distress has a right to make a contract with a salving vessel under which it obtains the benefit of salvage services of a personal nature rendered by members of the crew, and at the same time escape obligations to those members of the crew for those services, it will not either do to say that a ship desiring to be towed off a bar may not make a contract for that towage, and escape payment of a salvage award to the owner, where, as in this case, the crew claiming salvage rendered no personal services of a salvage nature, but merely do their routine work on their own vessel, without danger or risk to themselves or the vessel, and without the exercise of any ingenuity or skill in helping to save the vessel served.

[3] This is such a case, for while, had there been no contract for towage, and had the Eleanor accepted the services of the Freeport Sulphur No. 1 and her crew to pull her off the bank, it might have been held that a salvage service of a low order had occurred, it cannot be justly said here that the Eleanor has subjected herself to liability for a salvage claim to persons who performed no personal salvage services whatever, merely by entering into a contract for towage with the owner, with a stipulation against salvage liability.

I am therefore of the opinion that, whether the service rendered, apart from the contract itself, would have been a service for which a salvage award of a very small amount could be made to the ship and her crew, under the circumstances of this case, the crew having done nothing whatever personally, and

the Freeport Sulphur Company having been permitted by the Eleanor to make contact with her and pull her off only because of the contract, the crew here are not entitled to any salvage award.

The Lowther Castle (D. C.) 195 F. 604: "The services being in the nature of salvage, the crew could not be deprived of the bonus which the law gives for such services simply because the owner of the tug made a settlement with the claimant for the services so rendered. The policy of the law is to reward, not only the vessel, but also and particularly *the persons who risk limb and perhaps life in rendering salvage services, and, while the owner of the vessel may settle for the vessel's share in the services rendered, he cannot* exclude the crew from obtaining theirs. Salvage goes beyond quantum meruit, *and personal services rendered in salvage are not under the control of the owner of the vessel.*"

In The Olockson (C. C. A.) 281 F. 696, the court said: "That the crew are employed by their own vessel for fixed wages is a fact which exists in every case where salvage is allowed, and is not a barrier to an award of salvage, where the service performed was extraordinary as in this case. The work was arduous, involved constant labor, * * * with more or less risk, for a long and continuous period."