[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12176
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-20041-JAL


BISCAYNE TOWING & SALVAGE, INC.,

                                                    Plaintiff - Appellant,

versus

M/Y BACKSTAGE,
HULL ID XAX80051L506,
its engines, boats, equipment, machinery,
furnishings, apparel and appurtenances, etc., in rem,
PRIVATE MARINE VENTURES, LLC,
in personam,

                                                    Defendants - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2015)

Before JULIE CARNES, FAY and COX, Circuit Judges.

PER CURIAM:

Biscayne Towing & Salvage, Inc. ("Biscayne Towing") sued the M/Y Backstage in rem ("Backstage") and its owner, Private Marine Ventures, LLC, in personam, for salvage of the Backstage. The district court, finding it undisputed that the Backstage "was not in 'maritime peril'" (Doc. 53:7) when Biscayne Towing allegedly salvaged it, granted the Backstage and Private Marine Ventures summary judgment (Doc. 53). We reverse and remand.

## I. Facts

Viewing all the evidence and with all reasonable factual inferences drawn in favor of Biscayne Towing, the non-movant, these are the facts. A yacht docked in the first slip of Grove Harbor Marina's Pier One caught fire. Fire department personnel arrived at approximately 6:30 a.m. The igniting yacht and the one in the next slip to the east along the pier were engulfed in flames. The third yacht to the east was burning badly. The fourth yacht to the east, the M/Y Splendour, had fire on its starboard side. The Backstage, the fifth yacht to the east and the yacht at issue in this case, was not on fire but was getting hot on its starboard side.

Peter Hargreaves, the owner of Biscayne Towing, arrived on the scene with a towboat at 6:40. An official of the City of Miami Fire Department said they needed to create a firebreak by pulling the Splendour out of its slip. Hargreaves agreed. He backed up his towboat and threw a line to a fireman on the bow, who secured it. The towline secured, the starboard lines already burned through, and

2

the port lines cast aside, Hargreaves began moving the Splendour out of its slip at 6:46—6:50 a.m.

The Backstage's owner, Alan Zima, and its assistant pilot, Ernie Portuondo, arrived at the Backstage's stern just after 7:00 a.m. and announced their readiness to move the Backstage. Firemen would not allow them to board the vessel. Although the fire on the Splendour had been extinguished in the slip, the fire rekindled as it was towed out of the marina. A Miami-Dade County Fire Department fireboat eventually arrived to extinguish the fires on the three yachts still burning. The Backstage never caught fire, but suffered extensive heat-related damage on its starboard side.

## II.  Proceedings Below

Biscayne Towing filed against the Backstage and its owner a verified complaint for salvage. Extensive discovery ensued, following which the Backstage and its owner sought summary judgment, arguing that salvage was unwarranted because Biscayne Towing rendered indirect benefit to a vessel not in need of assistance.

The district court granted summary judgment on the basis that the Backstage faced no maritime peril, an essential element of Biscayne Towing's claim. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary

3

judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")  In particular, the district court reasoned that where "the vessel has the situation under control such that there is no 'reasonable apprehension for her safety in the future if left to her own unaided efforts,'" there is no peril. (Doc. 53:7) (citations omitted).  The district court's basis for concluding that no maritime peril existed was that Alan Zima, the principal member of the Backstage's owner, Ernie Portuondo, its captain, and the dock master, Tony Zamora, had arrived as the Splendour was pulling out.  They told the firemen that they could move the Backstage because her engines were operable. The district court acknowledges that the firemen refused to let them board the Backstage until the fire was under control and the Splendour was out of the marina.

### III.  Contentions of the Parties

The Backstage and Private Marine Ventures contend that no maritime peril existed because the vessel neither requested nor needed assistance.  Biscayne Towing challenges the district court's grant of summary judgment on the basis that genuine issues of fact exist as to whether the Backstage was in maritime peril.

### IV.  Standard of Review

Summary judgment is proper when there are no genuine issues of material fact and the moving party, on the basis of the undisputed facts, is entitled to

4

judgment as a matter of law. FED. R. CIV. P. 56(a).  We review *de novo* the trial court's grant or denial of a motion for summary judgment, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guaranty Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002).

## V.  Discussion

"Salvage is the reward or compensation allowed by the maritime law for service rendered in saving maritime property, at risk or in distress, by those under no legal obligation to render it, which results in benefit to the property, if eventually saved." *The Neshaminy*, 228 F. 285, 288-89 (3rd Cir. 1915).  The essential elements of a salvage claim are: "(1) A maritime peril from which the ship or other property could not have been rescued without the salvor's assistance[;] (2) A voluntary act by the salvor—that is, he must be under no official or legal duty to render the assistance[; and] (3) Success in saving, or in helping to save at least part of the property at risk." *Klein v. Unidentified Wrecked, etc., Vessel*, 758 F.2d 1511, 1515 (11th Cir. 1985) (citations omitted).  A maritime peril does not exist where "the vessel has the situation under control such that there is no 'reasonable apprehension for her safety in the future if left to her own unaided efforts.'" *Fine v. Rockwood*, 895 F. Supp. 306, 309 (S.D. Fla. 1995) (quoting *The J.C. Pfluger*, 109 F. 93, 95-96 (N.D. Cal. 1901).  "However, the danger need not be

5

immediate or actual. All that is necessary is a reasonable apprehension of peril." *Id*. at 309 (citations omitted).

We need not resolve the purely legal question whether the existence of maritime peril has a "needs-assistance" component as contended by the Defendants. Rather, we conclude that the district court erred in granting summary judgment because the district court resolved two genuine factual issues that were disputed in order to arrive at the conclusion that no maritime peril existed.

First, the district court resolved in favor of the Defendants, despite evidence to the contrary produced by Biscayne Towing, that the Backstage was in a position to be moved before the Splendour blocked its way. Removing the Splendour was to create a firebreak. There is evidence that the Splendour was moving out of its slip when Lima and Portuondo arrived and said they were ready to move the Backstage. There is evidence that the Splendour was blocking the Backstage's way by then, but no evidence that firemen told Biscayne Towing to stop.

Second, the district court glosses over the fact that the firemen would not allow Lima and Portuondo to board the Backstage. There is evidence that the firemen would not allow Lima and Portuondo on the Backstage until the firebreak was created and the fires on the first three boats were put out by the late-arriving fireboat.

6

Summary judgment was improper because the district court resolved these two genuine issues of material fact concerning the Backstage's ability to move itself out of harm's way. There is a genuine issue of fact as to whether a maritime peril existed.

## VI.  Conclusion

For these reasons, we hold that the district court erred in granting summary judgment to the M/Y Backstage, in rem, and Private Ventures, LLC, in personam, and against Biscayne Towing & Salvage, Inc. We vacate the grant of summary judgment and remand the case to the district court for further proceedings.

REVERSED and REMANDED.