### THE KEY WEST.*

(*Circuit Court, E. D. Louisiana.* November 25, 1881.)

1. SALVAGE—FROM FIRE AT PIER.

Where a tug-boat and the river salving boat both came to the relief of a steamer on fire at a pier, arriving at about the same time, the tug endeavoring to pull out into the stream a vessel lying beside the burning vessel, *held*, that the river salving boat, by throwing water on the vessel in danger, rendered meritorious service, and of value to the salved vessel.

2. SAME—RIVAL SALVORS.

Though two salving boats did not work in harmony nor to the best advantage, and the efforts of one embarrassed the other, but not intentionally, and there was excitement and misdirected effort, yet the service was meritorious and of value to the salved vessel.

3. SAME—DISTRIBUTION OF AWARD.

Each case of salvage must stand on its own merits, with regard to the rate of distribution of the sum awarded, between owners and crew, but regard should be paid to the value and time of service of each.

Appeal in Admiralty.

*M. M. Cohen,* for libellants.

*O. B. Sansum,* for claimants.

PARDEE, C. J. This suit is for salvage services in case of fire in the port of New Orleans. The following facts are undisputed.

(1) That on the morning of January 5, 1881, the steam-boat Wm. Fagan, lying at the wharf at the head of Bienville street, in this city, took fire and soon burned. (2) That the steam-boat Key West at the time lay along-side of the Fagan, the bows of the two boats about six feet apart, and the sterns a much greater distance apart, the Key West being below the Fagan, with the wind and eddy both going up stream. (3) That the alarm of fire was given by the Key West, the watchman ringing the boat's bell as fast and as hard as he could. (4) That in response to the call the tug-boat Charlie Wood and the river salving boat Protector came to the assistance of the burning vessel, arriving there about the same time. (5) The Wood, coming in on the lower side of the Key West, made fast and pulled the Key West out

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

in the stream and away from the burning Fagan, and then towed her over the river. (6) The Protector came in on the upper side of the Key West, as appears, in response to the call of one of the city firemen on board, and striking her nose against the port quarter, near the stern of the Key West, pushed her against the wind and eddy further away from the Fagan, and pushed so hard that the Wood was embarrassed in her efforts to pull the Key West out in the stream. (7) At this time the Key West was on fire, or next to it; she was smoking from the heat, if not actually from fire; her paint was blistering, and all concede that the screen on the port side took fire then or soon after. (8) At the same time the Protector, from her forward pumps, threw water on the Key West, the libellants claiming on the forward part of the cabin, where the scorching and fire undoubtedly were, and the claimants claiming that it was on the rear and stern of the boat, where there was no fire. (9) The Key West was worth $15,000, and the owners have settled the Wood's claim for salvage by paying the sum of $800.

On these facts there would seem to be no doubt that the Protector rendered salvage services to the Key West, and the court would only have to fix the sum to be allowed under the general rules recognized in such cases; but the respondents object that the Protector and her crew did not render any valuable service; but, on the contrary, they acted in bad faith by not throwing water when the danger was greatest; and that they purposely embarrassed the efforts made to get the Key West out of danger, and that they have magnified and enlarged all the circumstances of the danger, and the damage and risk, with a view of obtaining large salvage. An examination of the evidence does not satisfy me that these charges are sustained. The two salving boats did not work in harmony, nor perhaps to the best advantage, and the efforts of one embarrassed the other; but I do not find this was intentional. There was excitement and rivalry and misdirected effort, but not malicious bad conduct; and, on the whole evidence, I am satisfied that the services of the Protector were meritorious, and of value to the Key West. Notwithstanding this, the services of both the boat and crew were without risk or danger, and should grade very low as salvage services. As an original proposition, if the whole case were before me, I should think that 5 per cent. on the value of the boat aided, or $750, would be ample for both tug-boats and crews, giving 3 per cent., or $450, to the Wood, and 2 per cent., or $300, to the Protector. As the Wood has been settled with, and is not before the court, my views will be carried out by giving the Protector $300.

The mode or rate of distribution to the Protector and her crew fixed in the district court, three-fourths to the boat and one-fourth to the crew, in proportion to their monthly wages, seems to be satisfactory to the parties interested, and I will follow that without commit-

ting myself to the justice of it. The fact is that each case of salvage must stand on its own merits, with regard to the rate of distribution between owners and crew; but regard should be paid to the value and time of service of each, and it should be kept in mind that iron boats and steam machinery cannot assume responsibility or display heroism. The amount allowed in the district court was evidently based on the amount paid the Wood, and on the proposition of settlement alleged on the part of an insurance agent. The Wood was paid too much, and the proposition of settlement was unauthorized. It is hardly necessary to say that the facts in this case are decidedly different from those in the case of *The Protector* v. *The Choteau*, decided last term.

Let a decree be entered in favor of libellants and intervening libellants for $300 salvage, against the steam-boat Key West, and for costs of suit; and distributing said salvage, three-fourths to the intervening libellants, the New Harbor Protection Company, and one-fourth to the master and crew of the Protector.