## PARK v. DIRECT NAVIGATION CO., Inc.

(District Court, S. D. Texas, Galveston Division.    July 18, 1918.)

### No. 71.

1. SALVAGE ⬤—31—ASSISTANCE AGAINST FIRE—EFFICIENT AID—AMOUNT.

   Where captain and crew of tug promptly went to aid of oil-burning tug on fire, when her captain whistled for help, incurring no danger, and passing lines of hose to burning tug, which its crew used to extinguish fire, so that tug suffered no damage, harbor being supplied with fire-fighting vessels, award of 3 per cent. of value of salvaged tug, or $1,000, will be made to owner, master, and crew of other.

2. SALVAGE ⬤—38—APPORTIONMENT.

   Award of salvage for assisting another tug to extinguish fire on board, service involving no danger, and its meritorious character consisting in prompt response to call for help, will be apportioned two-thirds to owner and one-third to master and crew of salving tug.

In Admiralty.    Libel in personam by W. G. Park against the Direct Navigation Company, Incorporated.    Decree for an award of salvage, and its apportionment ordered.

Terry, Cavin & Mills, of Galveston, Tex., for libelant.
W. T. Armstrong, of Galveston, Tex., for respondent.

HUTCHESON, District Judge.    This is a libel in personam, brought by W. G. Park, owner of the tug R. C. Veit, on behalf of himself and the captain and crew, for salvage services rendered the tug Louise, the property of the respondent, the Direct Navigation Company, under the following circumstances:

About noon on the 27th day of March, 1914, the tug Louise, an oil-burning tug, having taken oil into her tank at Southern Pacific Pier A, cast loose to go on her way to Lynchburg.    Before she had gotten out of the slip into the channel, the engineer discovered an oil fire in her bilges, and immediate efforts were taken by the engineer and crew, by the use of steam and hose, to extinguish the fire before it could spread and cause the blowing up of her oil tanks, which were located directly over and a little forward of the bilges.    Shortly after the boat had entered the channel, the water glass on the boiler having been broken for the benefit of the escaping steam, the engine shut down.    All openings into the boat which led to the hold and the engine and fire rooms being closed and the boat drifting, the captain of the tug Louise blew two short blasts of his whistle for assistance.    The crew of the Veit, which was lying at the Southern Pacific dock, Pier B, and which had been passed by the Louise on her way down the channel, had noticed

⬤—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

black smoke issuing from around her stack and from around the umbrella over her stack, and, anticipating trouble, had gotten herself ready to go to her assistance, should she call. Within a very brief space of time after the call, not more than five minutes, the Veit lay alongside the Louise, and in response to the call of Capt. Norman of the Louise, "For goodness sake, give us some water! we are burning up," the Veit took hold of the Louise with a single line, and, lying to at her stem, caused two lines of hose to be passed over to the Louise, and commenced pumping water through them. While there was no panic on board the Louise when the Veit arrived, there was a lively appreciation of the fact that the situation might become dangerous, as evidenced by the fact that the lifeboat of the Louise had been lowered, the clothes of some of the men had been brought on deck, and preparations had been made to leave the Louise, should it become necessary to do so. In a short while after the Veit arrived and commenced pumping water, the fire was extinguished, through the joint action of the steam and water hose of the Louise and the water hose and assistance given by the Veit. No member of the crew of the Veit went aboard the Louise, but all of the work of putting out the fire was done by her own crew. After the fire was extinguished, with no damage, except some marks upon and discolorations of the woodwork, and dirt and filth in the bilges and in the fire and engine rooms from the discharge of the water therein, the Veit, at the request of the Louise, towed the Louise back into the slip, moored her to the dock, furnished her with steam to pump out her hold, and stood by until the condition caused by the fire had been remedied. In all, the services of the Veit consumed about three hours.

All of this took place in the harbor of Galveston a short distance from the docks, in calling distance of the municipal fireboat; many tugs, amply supplied with fire-fighting apparatus, were present, capable of furnishing assistance; yet no tug came to the assistance of the Louise in response to her call, except the R. C. Veit. So that, while it is quite true that the services performed were performed at a place and under circumstances attended with no appreciable danger to the crew of the Veit, and where, had the Veit not arrived, it is morally certain other assistance would have arrived in time to prevent the destruction of the Louise by fire, the fact remains that the Veit did, with great promptness and resourcefulness, repair to the scene of the trouble, and either alone or with the assistance of the fire apparatus of the Louise herself, and her crew, did extinguish the fire without any loss to the owners.

[1] That the facts present a case for salvage is clear. It is, however, equally clear that the salvage is one of a low order, distinguished by no element which lends a meritorious character to salvage service, except the one element of great promptness and efficiency in the matter of the succor given. Much testimony was presented by the respondent to prove that the fire was negligible, that the risk was nil, that the peril was a mere bagatelle, and, if the theory which this evidence is designed to establish, that the services could not be of a meritorious character, because neither the salved nor the salvaging vessel were in

great peril, were a correct one, it would be a defense to this case, efficient and complete. But salvage cases are directly subject to the influence of the maxim that "foresight and not hindsight must be the test by which to judge the value of the services," and that it will not do to say, because the issue was met with absolute success, and peril and loss avoided, that there shall be no award.

In this class of cases the court endeavors, in passing upon the award, to give the matter that direction which the circumstances existing at the time the service was rendered should give it, and not that suggested by later events, so that, while it is true that the loss was slight, and therefore, looking backward, it might be thought the service was slight, there must be borne in mind that the proof is clear and positive that the captain and crew of the Louise were apprehensive that the fire might increase in fierceness, that this would cause the tanks to explode, and that under that apprehension the captain blew for help, because, and only because, of the existence of the fire. While it is the opinion of the court, in the light of the evidence, that, even had the Veit not arrived, the damage would perhaps have been slight, and that the pumps and steam of the Louise might unaided have extinguished the fire, it is equally the view of the court that neither the master of the Louise nor the master of the Veit believed so at the time, and that they both acted upon the belief that, unless the Veit gave succor, great damage might ensue.

In addition to the claim that the service was not a salvage service, the respondent asserts that by reason of a contract between the libelant and the Southern Pacific Company, by the terms of which the libelant was obligated to furnish fire protection and other services to the property of the Southern Pacific Company, the services were contractual, and not voluntary; and he makes the further contention that, if the contract did not deprive libelants of the right to recovery, it creates a situation in which the Southern Pacific Company was entitled to share in any award that may be made. That his contention is unsound is shown both by the terms of the contract, which limits the period in which the services must be rendered by the tug Veit to the time between the hours of 6 p. m. and 6 a. m., while this occurrence was at noon, and not between the hours named, and by the further fact that there is no evidence that the Louise was the property of the Southern Pacific Company, or came within the description of the subject-matter of the contract, even had the services been performed within the period stipulated therein. The court therefore discards this defense as wholly untenable, either in bar or diminution of the libelant's claim. The court finds that the services were voluntary, were efficient, and were rendered solely by the tug Veit in the interest of her owner, and the master and crew in the interest of themselves, and no other.

It will serve no useful purpose to catalogue the fundamental considerations stated and restated in the hornbooks which underlie an award. It will be sufficient to point out that here was no bold and daring exploit of the kind which furnishes admiralty with its dramatic cases of salvage award, and that, were this a case decided under the influence alone of the ancient rule of risk and peril at sea, little, if any,

salvage award could be made. The more modern decisions of courts of admiralty, however, show recognition of a marked change, not in principles, but in the application of the principles of salvage to the conditions of modern seafaring, and while in the inception of salvage the element of risk and peril was the dominating element in recovery, now the element having the largest influence seems to be that of the ability to render instant and effective service, and the beneficial character of the service rendered. In short, while in ancient days the more difficult the enterprise, whether through defective equipment or through the vis major of the sea, the greater the salvage return, now the more the enterprise is made easy, through highly developed and efficient equipment, such as steam apparatus and equipment, the larger the recovery, because, the fundamental principle of salvage being voluntary and effective service, the modern law of admiralty looks with favor upon efficient salvage equipment, which makes certain, speedy, and effective service.

This view of the law is excellently stated by Judge Toulmin in The Pleasure Bay (D. C.) 226 Fed. 55, in which case, after quoting from The Blackwall, 10 Wall. 1, 19 L. Ed. 870, as follows:

"Steam vessels are considered as entitled to a liberal reward, not only because the service is usually rendered by a costly instrumentality, but because the service is in general rendered with greater promptitude and is of a more effectual character."

—he says, "In case of fire, the first moments are the most important," and further applying the principle to the facts of that case:

"The services rendered by the Linnet were prompt, meritorious, and efficient. They were effective in relieving the steamer from danger, which was not only reasonably to be apprehended, but was, in my opinion, from the evidence, actually present. There was no particular danger to the Linnet or crew involved; but assistance rendered at a time most needed is an important element."

Of course, the question of peril and arduous labor and great adventure is still a very high factor in a salvage award, and had the services in this case been rendered by the well-equipped Veit in a case where no other equally well equipped vessel could be obtained, and under circumstances of great danger to itself and crew, the award, under the influence of these conditions, would have been much larger. Because of the fact that the services rendered were in a harbor equipped with other fire protection, notwithstanding the fact that the Veit unquestionably assisted the Louise, and the further fact that the salvaged vessel suffered no loss, the libelant must be content in this case with a small award. See The Indian, 159 Fed. 20, 86 C. C. A. 210, and Guffey Petroleum Co. v. Borison, 211 Fed. 595, 128 C. C. A. 194, both decisions of the Circuit Court of Appeals for the Fifth Circuit.

[2] Giving to the principles thus announced their proper influence in this case, there should be an award to the libelant of $1,000, approximately 3 per cent. of the value of the Louise, which the undisputed testimony fixed at $30,000; said sum being apportioned $666.67, or two-thirds, to the owner, and one-third, or $333.33, to the master and crew, to be distributed to them in proportion to their wages; and a decree for such sum and such apportionment is hereby ordered.