ordinary consequences of her acts, but it is alleged that she intended thereby to hinder and delay her creditors for fraudulent purposes, to deprive them of property which she should have disclosed and in all honesty and fair dealing turned over to them, or for their benefit.

[2] The intent on her part, concerning the bank and its assets, must be regarded as an intent to conceal her property. Her purpose undoubtedly was to conserve it in some manner for her own use; hence it followed that she did not regard her title to it as having been severed or lost. Whether she had any right to or control of all of her property during the time of such concealment is not the criterion by which the effect of her act is to be determined. For this purpose her intent, and not the effect of her act, is of importance. However, whatever may have been her interest, even if her assignment should eventually be regarded valid as affecting the property concealed from her assignee and creditors, it cannot be denied but that she did retain an equity in the same to redeem, in case there was more property than sufficient to pay the creditors.

It appearing from the petition that Mrs. Glazier concealed from her creditors and from her assignee, and permitted to be concealed from them, a part of her property while insolvent, with intent, etc., and so continued to within four months of the filing of such petition, an act of bankruptcy is disclosed, for which a petition against her will be sustained.

The demurrer is therefore overruled.

---

### THE ACRE.

(District Court, E. D. New York. April 29, 1912.)

SALVAGE (§ 10*)—SERVICES ENTITLED TO COMPENSATION—MOVING VESSEL FROM FIRE.

Services rendered by vessels and dockmen in moving a vessel, which was in danger of fire by communication from another vessel, although rendered in connection with the salving of such other vessel, *held* salvage services, and entitled to compensation as such.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 18–20; Dec. Dig. § 10.*]

In Admiralty. Suit by James Brooks and others against the steamship Acre. Decree for libelants.

Foley & Martin, for libelants.

Haight, Sanford & Smith, for claimant.

CHATFIELD, District Judge. The salvage of the Javary necessitated moving the Acre. The fire proved to have been dangerous to the Acre only by communication from the Javary. The Acre was, however, in a dangerous situation because of the possibility of that communication, and the aid given her was a salvage service. This was rendered by the Ox, the Gertrude, the men on the Lucas and the Acre (who shifted the lines and used their windlass), and the

men on the dock, who shifted the lines there.   These salvage services were all connected with the services rendered to the Javary, and in that respect the case is like the City of Atlanta (D. C.) 56 Fed. 252, in which the court held that "an indirect advantage derived from the rendering of a salvage service to another vessel" cannot be made the basis of an award.   But where a boat is in the direct zone of danger, and the indirect services are a part (as in this case) of an attempt to save that boat (the salvors thinking that it could be saved), instead of trying first to save a boat which, in their opinion, could not be reached, or was already hopelessly on fire, there should be some award. Even though a salvage allowance has been granted for the entire service to the Javary (including the indirect work in moving the Acre), and although for this service the Gertrude is entitled to no compensation beyond what was recovered from the Javary, yet any award for the services of direct benefit to the Acre herself should not be thrown on the Javary.   Nor should such services be treated as mere towing services, like those rendered in The Bessie Whiting (D. C.) 35 Fed. 79, and The Carondelet (D. C.) 36 Fed. 714.

The direct services of salvage to the Acre would seem to justify an award of $150 to the Gertrude, when viewed from the standpoint of participation in the benefit offered and the protection afforded.   This benefit and protection was furnished almost equally by the Ox and the men on the pier and on the steamer, and hence a total valuation of $450 for services to the Acre alone is indicated, and this seems to the court to be fair.   From the standpoint of ordinary towing (that is, of mere physical expenditure of power), the Ox did much more than the Gertrude; but the general situation, the disinclination of the Ox to undertake the saving of the Javary, and the readiness of the Gertrude to leave the towing service to the Ox, considered with the capacity for help (if it had proved necessary) which the Gertrude furnished, makes an equal division of credit (that is, of award) a proper basis of allowance.

The libelant may have a decree for $150, with costs.

---

DETROIT STEEL COOPERAGE CO. v. SISTERSVILLE BREWING CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   June 1, 1912.)

No. 1,081.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Wheeling.   On petition for rehearing.   Denied. For former opinion, see 195 Fed. 447.

Charles N. Kimball, of Sistersville, W. Va., and George M. Hoffheimer, of Clarksburg, W. Va. (Orla B. Taylor and Walter S. Sugden, both of Sistersville, W. Va., on the briefs), for appellant.

Thomas P. Jacobs, of New Martinsville, W. Va. (Arlen G. Swiger, of Sistersville, W. Va., on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and BOYD and ROSE, District Judges.

PER CURIAM.   Rehearing denied.