### THE SAN CRISTOBAL.

#### (District Court, S. D. Alabama, S. D. June 12, 1914.)

#### No. 1451.

1. SALVAGE (§ 7*)—NATURE OF SERVICE—INDIRECT ADVANTAGE TO ANOTHER VESSEL—"SALVAGE SERVICE."

A salvage service is a service voluntarily rendered to a vessel needing assistance and is designed to relieve her from some distress or danger either present or to be reasonably apprehended, and an indirect advantage derived from the rendering of a salvage service to another vessel cannot be made the basis for a salvage award.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 13, 16, 26; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 7, pp. 6316–6318.]

2. SALVAGE (§ 10*)—NATURE OF SERVICE—INDIRECT ADVANTAGE TO VESSEL.

Libelants' tugs rendered valuable service in preventing the spread of a fire which consumed a lumber mill. At the end of a pier extending from the mill into the river was a dry dock upon which was respondents' steamship. Neither the dock nor vessel was injured by the fire, nor were any of the services of the tugs rendered to them. *Held*, that the vessel was not liable for salvage services.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 18–20; Dec. Dig. § 10.*]

3. SALVAGE (§ 3*)—SUBJECT OF SALVAGE SERVICE—MOORED DRY DOCK.

A floating dry dock permanently moored is not a subject of salvage service which can be made the basis of a suit in admiralty.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 5, 6; Dec. Dig. § 3.*]

In Admiralty. Libel by the Mobile Towing & Wrecking Company against the steamboat San Cristobal, for salvage. Heard on exceptions. Decree for respondent.

Hanaw & Pillans, of Mobile, Ala., for libelant.

G. L. & H. T. Smith, of Mobile, Ala., for claimant.

TOULMIN, District Judge. The facts of this case as they appear from the libel are substantially these: That Ollinger & Bruce owned a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lumber mill on the eastern shore of the Mobile river. It was connected by a pier or wharf about 75 feet long, with a dry dock moored to said wharf also owned by said Ollinger & Bruce. The dry dock was elevated out and above the water.. The steamship San Cristobal was on the dry dock. The mill was afire, and, while afire, two tugs of the libelant went to its relief and rescue, and rendered valuable services, to the extent of confining the fire to the mill proper. The mill was totally destroyed. The fire did not reach the dry dock or steamship. Neither were at all damaged by the fire. No direct service was rendered said steamship. No effort or offer was made to render any, and she remained on the dry dock undisturbed or untouched by either of the libelants' tugs, so far as appears from the libel.

Among salvage services are those of saving a stranded ship; taking aid to a distressed ship; saving a ship from fire either aboard or in dangerous proximity; removing a ship from any impending danger.

[1] A salvage service is a service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended.

Assisting a vessel "in a situation of actual apprehension, though not of actual danger," is salvage. The Lowther Castle (D. C.) 195 Fed. 605.

"Services rendered by vessels in moving a vessel, which was in danger of fire by communication from another vessel, although rendered in connection with the salving of such vessel, held salvage services, and entitled to compensation as such." But "an indirect advantage derived from the rendering of a salvage service to another vessel" cannot be made the basis of an award for salvage. The Acre (D. C.) 195 Fed. 1022.

[2] "Where a vessel afire, to which salvage services are being rendered, is, in the operation of such services, towed away from a second vessel, in whose vicinity she has been lying, such second vessel is not liable to pay salvage on account of her release from the possible danger of catching fire." No case has been cited or found "in which one vessel has been charged with payment of salvage for an indirect advantage derived from the rendering of a salvage service to another vessel." The City of Atlanta (D. C.) 56 Fed. 252–256. The court in that case said: "The absence of authority is no small evidence that an indirect claim forms no part of the law of salvage."

[3] "A floating dry dock, permanently moored, is not a subject of salvage service." Cope v. Vallette Dry Dock, 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501.

Admiralty has no jurisdiction of a claim for damages caused by vessels to a dock which, although in navigable water, is so connected with the shore that it concerns commerce on the land. C. T. & Valley R. Co. v. Cleveland S. S. Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215.

Moreover if the dry dock had caught fire and the libelants' tug had rendered services in extinguishing the fire, but not without some damage, there would have been no liability on the owner of the dry dock for salvage in this the admiralty court. The liability would be for services rendered the owner by suit in a common law court.