## THE NESHAMINY (two cases).

### (Circuit Court of Appeals, Third Circuit. December 10, 1915.)

### Nos. 1971, 1972.

1. SALVAGE ☞3—VESSELS SUBJECTS OF SALVAGE SERVICE—VESSEL IN FLOATING DRY DOCK.

A floating dry dock is not a subject of salvage service, but a vessel undergoing repairs in such dock may be the subject of such service.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 5, 6; Dec. Dig. ☞3.]

2. SALVAGE ☞7—NATURE OF SERVICE—"SALVAGE SERVICE."

A "salvage service" is a service voluntarily rendered to a vessel in need of assistance and is designed to relieve her from distress or danger either present or to be reasonably apprehended, and assistance to a vessel in a situation of actual apprehension, though not of actual danger, is a salvage service; the degree of danger being immaterial in considering the nature of the service.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 13, 16, 26; Dec. Dig. ☞7.

For other definitions, see Words and Phrases, First and Second Series, Salvage Service.]

3. SALVAGE ☞26—SUIT FOR COMPENSATION—ELEMENTS IN DETERMINATION OF AMOUNT.

The elements to be considered in a case of salvage are the danger to the ship, actual or apprehended, the degree of danger from which the property was rescued, the labor expended, and the promptitude, energy, and skill displayed by the salvors, the value of the property they employed in the service, and the risks and damage to which it was exposed.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 57–64, 68, 84; Dec. Dig. ☞26.]

4. SALVAGE ☞10—SERVICE ENTITLED TO COMPENSATION—VESSEL IN DRY DOCK.

While a barge was in a floating dry dock undergoing repairs, an engine house 10 feet from its side on the dock took fire. The dock was beyond the reach of the local fire department, and libelants' tugs after two hours' work extinguished the fire, one playing on it from the deck of the barge and the other from the other side. The barge did not take fire, though its side was blistered. It was in actual danger and would have burned if the dock had burned. The master, who was on board, did not ask the assistance of the tugs, but accepted and relied on it, as the only other means of saving his vessel was by sinking the dock, which he did not attempt. *Held*, that while the direct service of the tugs was to the dock, which was the only effective service that could be rendered, the direct result of such service was protection to the barge, which was a salvage service, entitled to compensation as such.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 18–20; Dec. Dig. ☞10.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suits in admiralty by Charles L. Walker, managing owner of the tug Lizzie Crawford, and by John P. Murray, master of the tug Delaware, against the barge Neshaminy; Philadelphia & Reading Railway Com-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany, claimant. Decrees for libelants, and claimant appeals. Affirmed.

For opinion below, see 220 Fed. 182.

Wm. Clarke Mason, of Philadelphia, Pa., for appellant.

J. Frank Staley and Lewis, Adler & Laws, all of Philadelphia, Pa., for appellee Walker.

Henry R. Edmunds, of Philadelphia, Pa., for appellee Murray.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The question, as presented, is whether an indirect advantage to a vessel, arising out of services in the nature of salvage services rendered to other property, is a proper basis for a salvage award.

The facts found by the District Court appear in its opinion. 220 Fed. 182. Only a brief summary will here be made.

The Barge "Neshaminy" was in a floating dry dock undergoing repairs. She was resting upon blocks and was elevated to the level of the decks of the dock. Upon one deck of the dock and in a position amidships the barge was an engine house; one side of which was flush with the inner wall of the dock. The other side projected over the outer wall about five feet. The barge was but ten feet from the engine house. Early one morning, a fire broke out in the engine house. Responding to an alarm, the Tug Delaware hastened to the scene, ran her bow under the overhang of the engine house and played a stream of water upon the fire, which burned fiercely for two hours or more. While the fire was still beyond control, the Tug Crawford arrived, ran a hose upon the deck of the barge, and from that position played upon the fire of the engine house until it was extinguished. The fire, however, had crept into the interior of the dock and extended down between its inner and outer walls. For an hour or more, the "Crawford" was engaged in extinguishing this fire.

The dry dock was beyond the reach of the local fire department. The crew of the barge was aboard. Its means for fighting fire were entirely inadequate, and the safety of the barge lay either in sinking the dock and causing the barge to float away or remaining in the dock and depending upon the services of the tugs. The barge was not afire, although close enough to the fire for its side to be blistered. Slush upon its decks protected it from sparks. The master of the barge did not ask for assistance, and none was rendered by the tugs in the sense of playing their streams upon it.

From the nature, extent and duration of the fire, and its proximity to the barge, the court found that danger to the barge was not merely to be apprehended, but was actually present. It also found that in rendering assistance, the Tug Delaware was in a position of some danger, while the Tug Crawford was in a position of safety.

Upon these findings of fact, the District Court awarded salvage to each tug, proportioned to the services rendered and the risks encountered.

The facts found by the trial court, after observing and hearing the witnesses, should not be disturbed unless the testimony clearly discloses a serious mistake and compels the appellate court to different findings and conclusions. The testimony amply justifies the findings. Therefore, the only matter for review is the question of law, whether the services indirectly rendered the imperiled barge, under the circumstances, raise a claim for salvage..

[1] Preliminary to a discussion of this question, it may be conceded that a floating dry dock is not a subject of salvage service, Cope v. Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501, and that a vessel while undergoing repairs in a dry dock, may be the subject of such service. The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73; The Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907.

It is admitted that if services had been rendered directly to the barge, or to the dock upon the request of the master of the barge, salvage should have been awarded. The Jefferson, supra; The Blackwell, 10 Wall. 1, 19 L. Ed. 870; The Rosalie, 1 Spinks, 188; The City of Newcastle, 7 Asp. Mar. Cas. (N. S.) 546; The Clarita and The Clara, 23 Wall. 1, 23 L. Ed. 146. But the appellant distinguishes the cases under review from the cases cited, (in which services were rendered directly to imperiled craft) and urges that the services performed by the tugs were rendered directly to the dock, and that the advantage which the barge indirectly derived from them was not a service rendered the barge or a benefit for which it should respond in salvage. The appellant cites The San Cristobal (D. C.) 215 Fed. 615, in which are cited The Acre (D. C.) 195 Fed. 1022, and The City of Atlanta (D. C.) 56 Fed. 252, as authority for the proposition that an indirect advantage to one vessel arising from a salvage service rendered to another cannot be a basis of a salvage award.

We make no criticism of this statement of the law as applied to the cases in which it appears, for those cases were decided, as this one must be, upon the fact of service rendered the vessel endangered, and not upon the claim of an indirect benefit incidentally derived from a service rendered another.

The facts of The City of Atlanta, supra, were these: The City of Columbia, a sister ship, was moored to a dock and to her side was moored the City of Atlanta. Fire broke out on the latter. Without requests or acts by the officers of the City of Columbia, from which it appeared or might be inferred that she was seeking or accepting assistance, tugs rushed to the City of Atlanta, pulled her out into the stream and extinguished the fire. The tugs libeled both ships. The court held that no service was rendered to the City of Columbia, though indirectly she may have derived a benefit from the service rendered the City of Atlanta; that the removal of the City of Atlanta to midstream, where she could be reached and the fire fought on both sides, was a prudent and necessary thing done exclusively for the protection of the ship afire and as a means by which the fire could more readily be reached and extinguished, and that the unsolicited and indirect benefit to the City of Columbia, concerning

whose danger there was conflict in the testimony, was merely incidental and did not constitute salvage service. The facts apparently justify this finding. The point of the finding is that no service was rendered the City of Columbia.

In The Acre, supra, the court found that an indirect service may be the basis of a salvage award. Upon facts in some respect similar to though distinguishable from those in The City of Atlanta, the court said:

"The salvage of the Javary necessitated moving the Acre. The fire proved to have been dangerous to the Acre only by communication from the Javary. The Acre was, however, in a dangerous situation because of the possibility of that communication and the aid given her was a salvage service. This was rendered by the Ox, the Gertrude, the men on the Lucas and the Acre, and the men on the dock. * * * These salvage services were all connected with the services rendered to the Javary, and in that respect the case is like The City of Atlanta (D. C.) 56 Fed. 252, in which the court held that 'an indirect advantage derived from the rendering of a salvage service to another vessel' cannot be made the basis of an award. But where a boat is in the direct zone of danger, and the indirect services are a part (as in this case) of an attempt to save that boat (the salvors thinking that it could be saved), instead of trying first to save a boat which, in their opinion, could not be reached, or was already hopelessly on fire, there should be some award."

Here the court found a service rendered, though indirect in its nature, and awarded salvage.

In the case of The San Cristobal, supra, the ship was in a dry dock undergoing repairs. The dry dock was moored to a pier, at the extremity of which upon the shore was a lumber mill. The mill was afire, and the libelant tugs rendered services by confining the fire to the mill, but rendered no direct service to the dry dock or the ship. Neither was damaged, nor does it appear that either was in danger. The court found that "no direct service was rendered" the ship, and refused an award of salvage, and in so finding, cited and quoted from The Acre and The City of Atlanta, supra. A careful reading of these cases discloses that they were not decided upon questions of direct or indirect benefits derived from services rendered other vessels. They were decided upon findings that salvage services, as distinguished from indirect benefits, had or had not been rendered. Whether in a given case such services have been rendered, depends upon the nature of the services and whether they came within the established principles of the law of salvage.

[2] A salvage service is a service which is voluntarily rendered to a vessel in need of assistance and is designed to relieve her from distress or danger either present or to be reasonably apprehended. McConnochie v. Kerr (D. C.) 9 Fed. 50, 53. Assistance to a vessel in a situation of actual apprehension, though not of actual danger, is salvage service. The Raikes, 1 Hagg. 247; The Phantom, L. R. 1 Adm. 58; The Joseph C. Griggs, 1 Ben. 81, Fed. Cas. No. 6,640. The degree of danger is immaterial in considering the nature of the service. The Westminster, 1 W. Rob. 232; The Lowther Castle (D. C.) 195 Fed. 604.

Salvage is the reward or compensation allowed by the maritime law for service rendered in saving maritime property, at risk or in distress,

by those under no legal obligation to render it, which results in benefit to the property, if eventually saved. Fretz v. Bull, 12 How. 466, 13 L. Ed. 1068; The Blackwell, 10 Wall. 1, 19 L. Ed. 870; Hughes' Admiralty, 127, 128, 129. The value of such a service and the amount of compensation to be awarded therefor are not to be estimated by the light of subsequent events, but of the facts which surround it at the time. The Lowther Castle (D. C.) 195 Fed. 604, 605, and cases cited.

[3] The elements to be considered in a case of salvage are the danger to the ship, actual or apprehended, the degree of danger from which the property was rescued, the labor expended and the promptitude, energy and skill displayed by the salvors in saving the property, the value of the property they employed in the service and the risks and damage to which it was exposed. The Pleasure Bay (D. C.) 226 Fed. 55, 56.

[4] Considering these elemental principles of the law of salvage in connection with the facts found by the District Court, we must inquire what services if any, were rendered the barge and whether they constitute salvage services.

The trial court found that the barge was endangered by fire upon and within the dry dock. To escape this danger the master had two ways open to him; first, to sink the dry dock, if he could, and float the barge out, and second, to stand by, accepting and relying upon the protection which the tugs were affording him. While there was controversy respecting the ability of the master to sink the dock without the assistance of skilled dock hands, it is certain he elected not to protect his barge by this one possible way open to his individual efforts, but relied for the safety of his barge upon the services being rendered by the tugs. Their efforts were directed against the fire, which was the thing that imperiled the barge. The object of their efforts was the preservation of the things which the fire threatened to consume, which included the barge quite as well as the dock in whose cradle it lay. It was apparent that if the dry dock could be saved, the barge would be saved. The converse is not true, for if in this situation the tugs had foolishly attempted to render a direct service to the barge by turning their streams upon it when it was not afire, the dock would have been consumed and the barge with it. What the tugs did was to attack the fire which endangered the barge, and its master, by his express admission, relied for the safety of his barge upon their efforts to extinguish the fire and remove the danger. While the direct service of the tugs was to the dock, the direct result of that service was protection to the barge, which the master elected to accept and rely upon in preference to protecting it by another method open to him. The fact that the services of the tugs were accepted by the barge is evidence that services were rendered the barge. The protection afforded and relied upon by the barge was not an advantage indirectly or incidentally arising out of a service directly rendered the dock, but was a direct protection which, when accepted and relied upon, amounted to a direct service to the barge.

The protection rendered was a service performed. As that service meets the requirements of the law of salvage, we are of opinion that the court committed no error in making the awards.

The decree below is affirmed.