**Petition of SUN OIL COMPANY, as owners of the M/T MAUMEE SUN, in a Cause of Exoneration from Limitation of Liability, Civil and Maritime.**

**No. 66 Ad. 508.**

United States District Court,
S. D. New York.
May 11, 1972.

---

**977**

Northern and Ronald J. Merczinger; John I. Dugan, New York City, of counsel.

OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, District Judge.

Plaintiff (formerly petitioner) Sun Oil Company, owner of the M/T Maumee Sun (hereinafter "Maumee Sun"), in this action seeks exoneration from or limitation of liability with respect to the collision and damages resulting therefrom, which occurred on November 23, 1965 in Hog Island Channel, inside the southern entrance to the Cape Cod Canal, with United States Lines freighter S. S. American Pilot (hereinafter "American Pilot").

This claim is allegedly brought under Sections 4282–4289 inclusive of the Revised Statutes of the United States and Section 18, Act of Congress of June 28, 1884, and various statutes supplemental thereto and amendments thereof and any other applicable law or laws.

The claimants (salvors) seek to recover a salvage award for services allegedly entered in coming to the assistance of the distressed Maumee.

After hearing the testimony of the parties, examining the exhibits, the pleadings and the Proposed Findings of Fact and Conclusions of Law and memoranda of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. I find that only the following persons were claimants at the time of the trial of this action:

1. Peter J. Govostes, pilot of the American Pilot;

Mendes & Mount, New York City, for petitioner; Frank J. Maley, William J. Russonello, New York City, of counsel.

Wilbur E. Dow, Jr.,[1] New York City, for claimants Peter J. Govostes and Francis M. Haggerty.

Fields, Rosen, McElligott & Auslander, New York City, for claimants William Primus and August F. Herrenberg; Wilbur E. Dow, Jr.,[1] New York City, of counsel.

Abraham E. Freedman,[1] New York City, for claimant Robert E. Hayes.

Dugan & Rosen,[1] New York City, for claimants Wilbur R. Lange, Harry C.

1. On page 1 of the trial record in listing the appearances the following was recorded:
"Proctors for All Other Claimants: Wilbur E. Dow, Jr., Esq."
Obviously, this was an inadequate statement of the parties for whom Mr. Dow appeared. As a result of this confusion the court was compelled to review the record in the file and in court to determine which salvor-claimants were in the case at the time of the commencement of the trial. This I have done as appears by finding No. 1 and the explanation thereof subjoined to said finding.

2. Francis M. Haggerty, her Chief Officer;

3. Wilbur R. Lange;

4. Harry C. Northern;

5. Ronald J. Merczinger;

6. Robert E. Hayes;

7. William Primus;

8. August F. Herrenberg.

The basis of this determination is as follows:

The pretrial order in this case dated February 6, 1970 and filed on the same date, in paragraph 8–B thereof provided as follows:

"Within 90 days from the date of this order each claimant will file in court an affidavit setting forth the basis of each claimant's claim."

On or about March 17, 1970, Abraham E. Freedman, Esq., attorney for some thirty one claimants, moved this court pursuant to Rule 56(d) of the Federal Rules of Civil Procedure for partial summary judgment determining that a valid class action has been stated on behalf of all the unlicensed crew members of the American Pilot or, in the alternative, for an order pursuant to Rule 15(a) and (c) of the Federal Rules of Civil Procedure permitting the addition of the said thirty one crew members as salvage claimants.

In an opinion and order dated May 19, 1970 this court, by Judge Metzner, denied this motion both to declare that a class action was being maintained under Rule 23(c) (1) and likewise denied the amendment requested. Accordingly, one of the crew members listed in the said notice of motion by Abraham E. Freedman is a party to this action.

At a pretrial conference in this action held on October 15, 1971 the undersigned directed that before trial the claimants or their counsel file the affidavits required in paragraph 8–B of the pretrial order and advised that they could be in substance on information and belief. (SM 9.)

Two clients of Wilbur E. Dow, Jr., Esq., filed claims, as follows:

1. Captain Peter J. Govostes, pilot of the American Pilot, filed July 27, 1966;

2. Francis M. Haggerty, Chief Officer of the American Pilot, filed September 20, 1966.

On June 22, 1966 Fields, Rosen, McElligott and Auslander, proctors for claimant William Primus, filed a so-called "claim for salvage," stating that Primus was a crew member aboard the American Pilot at the time of the collision between the Maumee Sun and the American Pilot; further stating that the claimant along with the other crew members made hawsers fast to the Maumee Sun and that the service rendered was a "salvage service of great merit" since the Maumee Sun was in danger of sinking, etc. At the time of the trial, although Wilbur E. Dow, Jr., Esq., claimed to be representing all of the other claimants, there was no statement by him to the effect that any such claim had been filed. Consequently, I feel bound to reverse my ruling on page 10 of the trial record and to reinstate the said William Primus as a claimant at the time of the trial of this action.

August F. Herrenberg, another crew member aboard the American Pilot on the date of the collision between the Maumee Sun and the American Pilot, filed a claim through Fields, Rosen, McElligott and Auslander, Proctors, which contained a similar statement to that of William Primus.

The same comment with respect to the proceedings at the commencement of the trial in respect to William Primus applies to this claimant, August F. Herrenberg, and for the same reasons I reinstate August F. Herrenberg as a claimant.

Abraham E. Freedman, Esq., in a letter dated March 14, 1972, stated that he had retainers from the following members of the crew of the Maumee Sun: Robert Hayes, Okay Lawson, Eriberto E. Cortes, Faustino Santiago, Rudy Hernandez, Ernest C. Cortez, Tito Berberena, Kenneth I. Mailhot, Dwyer A. Rob-

inson. However, the only crew member of this list of nine who submitted a claim was Robert Hayes, whose claim was filed on June 30, 1966. Although Hayes states in his claim that it is filed on behalf of other members of the crew, the ruling made by Judge Metzner herein distinctly eliminates all claimants referred to by Freedman's letter as above stated except Hayes. Hence, Hayes is a party-claimant but the others mentioned in the said letter from Mr. Freedman are not parties.

The same letter from Abraham E. Freedman, dated March 14, 1972, states that the firm had inquiries "concerning the progress of the litigation" from some five other crew members. Obviously under the "rule of the case," which I am following, and determined by Judge Metzner, there is no basis for an assertion that these five crew members were parties to this litigation at any time. "Inquiries" constitute no allegation of any claim in any event.

Although not stated in the letter from Dugan & Rosen dated March 15, 1972, an examination of the file of this case reveals the fact that a claim on behalf of Wilbur R. Lange, Ronald J. Merczinger and Harry C. Northern was interposed by John Irwin Dugan of the aforesaid firm on behalf of said persons on June 28, 1966. (See claim filed on said date.) This claim, filed on June 28, 1966, constitutes a pleading on behalf of the said claimants and consequently the court will have to deem that the said persons are claimants in this case.

2. Under a stipulation of discontinuance and withdrawal of certain claims on consent, the Sun Oil Company and the United States Lines Company agreed to settle collision damages on terms of a "washout," whereby United States Lines and Sun Oil would each withstand all of their own damages and that Sun Oil would pay to United States Lines the lump sum of $4,000 without interest for salvage services rendered by the United States Lines American Pilot in salvaging the Maumee Sun and its cargo. See stipulation dated January 15, 1970, filed in these actions, 66 Ad. 608, 66 Ad. 679, January 15, 1970.

3. At about 2145 hours, November 23, 1965, the Sun Oil Company tanker, Maumee Sun, collided with the United States Lines freighter, American Pilot, between buoys 3 and 3A in Hog Island Channel which lies just inside the southwestern entrance to the Cape Cod Canal. At the time of the collision, the weather was clear with unlimited visibility and there was a northwest wind of 16 knots. The American Pilot had the last of a head tide. (47–50, 53, 114–115, 161 [2]; Exs. 2, 3, 9, D and E.)

4. The Maumee Sun departed Newark, New Jersey at 0030, November 23, 1965, with a cargo of approximately 482,658 gallons of #2 fuel oil, bound for Revere, Massachusetts. The Maumee Sun drew 13'6" forward and 14'6" aft, was 221 feet in length and had a displacement of 1,800 tons. (15, 294; Ex. 3) The American Pilot, a freighter of 11,000 tons and 495 feet in length, was bound out of Hog Island Channel in a northeast to southwest direction at the time of the collision. (34–35; Ex. 2.)

5. Immediately before the collision the Maumee Sun was proceeding at full ahead at a speed of approximately 8 to 8½ knots. The Maumee Sun lacked a lookout in the bow of the ship at the time of the collision. (83, 86–87, 36–37, 19–20, 62.)

6. The Maumee Sun first sighted the American Pilot when the two ships were approximately 4⅓ miles apart. When the ships were about 1½ miles apart and approaching each other, the American Pilot, in the western half of the channel, blew one blast to indicate a port-to-port passage. At a distance of one mile she blew another blast and slowed to half speed. Both blasts were unanswered. At a distance of ¼ mile the American Pilot (which maintained a

2. Unless otherwise indicated, numbers in parentheses refer to pages in the stenographer's minutes of the trial.

proper lookout) steered further to her right, blew the danger signal and put her engines to full emergency astern. (29–30, 34–35, 140, 232, 143, 141–142, 186, 176, 232; Ex. 2.) The Master of the Maumee Sun heard the danger signal but assumed that it was meant for some other, unknown, small vessel. (63.)

7. At the time the American Pilot sounded the danger signal the Maumee Sun, heading northeast, was in the western half of Hog Island Channel. At this time the Maumee Sun was on the wrong side of the Channel and both ships were in a meeting situation. (170–171, 174–175; Exs. 2 and D.)

8. Immediately prior to the collision the two ships maintained relatively constant courses without major variation. The American Pilot's speed exceeded the average maximum speed set for the Channel but it cannot be said that either it or the Maumee Sun was moving at a legally excessive speed or that the speed of the American Pilot was a cause of the collision. (212, 218; Exs. 2, 7.)

9. The collision occurred when the Maumee Sun put her bow hard to starboard crossing the American Pilot's bow from west to east. The Maumee Sun's stern being thrown forward, her port quarter impaled itself on the American Pilot's bow. At the time of the collision, the American Pilot was either dead in the water or moving slowly astern. (145, 189, 42, 47–50, 53; Exs. 3, 9, D and E.)

■ 10. In summary I find that the causes of the aforesaid collision were:

(a) The failure of the Maumee Sun to keep a proper lookout;

(b) The negligence of the Master of the Maumee Sun in ignoring the danger signals of the American Pilot;

(c) The Maumee Sun's improper position in Hog Island Channel. The Maumee Sun improperly remained on the port side of the Channel at the time of the collision.

11. After the collision between the two ships the American Pilot sought to disengage or free and clear herself from the Maumee Sun. (151, 153–154.) The American Pilot was imbedded approximately 25 feet into the stern section of the Maumee Sun. (152.) Immediately after the collision, the pilot of the American Pilot, Peter Govostes, concluded that the ships could not be safely disengaged and ordered that the ships be lashed together.[3] (153–154.)

■ 12. I find that either the American Pilot or the Maumee Sun may have sunk if, immediately after the collision, the American Pilot had disengaged from the Maumee Sun. (235.) Furthermore, if the American Pilot had disengaged there was the immediate possibility that either the American Pilot or the Maumee Sun would have caught fire. (152.) In any event, I find that it would have been an extremely perilous maneuver for the American Pilot to disengage from the Maumee Sun immediately after the collision. The safety of the American Pilot and her crew required that the American Pilot remain imbedded in the Maumee Sun and make no attempt at disengagement immediately after the collision. I, therefore, find that the American Pilot did not voluntarily render assistance to the distressed Maumee Sun.

---

3. Govostes testified as follows:
"QUESTION: What instructions did you give Mr. Haggerty?
"THE COURT: When?
"MR. DOW: Immediately after the collision.
"ANSWER: The instructions first was to find out if there was anybody hurt.
"QUESTION: All right, and after that?
"ANSWER: How bad the vessel was and if there was any chance that we could pull away from her and clear ourselves or free ourselves of her.
"QUESTION And what was the answer to that?
"ANSWER: Negative.
"QUESTION: And then what did you instruct him to do, if anything?
"ANSWER: To secure as best as he could the Maumee Sun to us using the closest lines available.
"QUESTION: And did he do that?
"ANSWER: Yes, sir." (153–154.)

13. Upon completion of the lashing, the American Pilot maneuvered for a period of approximately ten hours with its bow imbedded in the Maumee Sun. The American Pilot moved the ships out of the Channel into the deeper water of Buzzard's Bay to a point approximately eight miles southwest of where the collision occurred, maintaining station there until disengagement. (151–156, 235.) In Buzzard's Bay the tanker Senior came alongside the Maumee Sun and lightened the Maumee Sun of her fuel oil cargo. (156–157.) After the cargo of the Maumee Sun had been transferred, the American Pilot, with the permission of the United States Coast Guard, disengaged from the Maumee Sun. (153, 157.)

■ 14. I find that under the statute of the United States, 33 U.S.C. § 367,[4] the American Pilot was obligated to stand by and render assistance to the distressed Maumee Sun, unless to do so would subject the American Pilot or those on board to serious danger. The American Pilot and her crew were exposed to the least amount of danger by remaining imbedded in the Maumee Sun. As hereinbefore stated (see finding 12), the safety of the American Pilot and her crew necessitated that the American Pilot remain imbedded in the Maumee Sun. By remaining imbedded in the Maumee Sun the American Pilot was not only fulfilling her statutory obligation to stand by and render assistance but was also exposing herself and her crew to the minimum amount of danger under the circumstances.

15. By way of summary I find that:

(a) The collision between the Maumee Sun and the American Pilot was caused solely by the Maumee Sun.

(b) The American Pilot is not entitled to a salvage award since she did not voluntarily render assistance to the Maumee Sun. The safety of the American Pilot and her crew required that the American Pilot remain imbedded in the Maumee Sun and to make no attempt at disengagement immediately after the collision.

(c) The American Pilot was required by statute to stand by and render assistance to the distressed Maumee Sun.

## DISCUSSION

The sole issue is whether the claimants herein are entitled to a salvage award.

■ In its simplest form salvage can be described as a service voluntarily rendered in relieving property from an impending peril at sea by those having no obligation to do so. Fretz v. Bull, 12 How. 466, 13 L.Ed. 1068 (1851); The Blackwell, 10 Wall. 1, 19 L.Ed. 870 (1869).

Mr. Justice Clifford in The Sabine, 101 U.S. 384, 25 L.Ed. 982 (1879), referring to a salvage award, wrote:

"Salvage is the compensation allowed to persons by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril . . . ." at 384.

Judge Addison of this court years ago defined a salvage service as:

"A service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended." M'Connochie v. Kerr, 9 F. 50, 53 (S.D.N.Y.1881).

■ The law is well settled that the three essential elements of salvage are "1. a marine peril, 2. Service voluntarily rendered when not required as an ex-

4. "In every case of collision between two vessels it shall be the duty of the master or person in charge of each vessel, if and so far as he can do so without serious danger to his own vessel, crew, and passengers (if any), to stay by the other vessel until he has ascertained that she has no need of further assistance, and to render to the other vessel, her master, crew, and passengers (if any) such assistance as may be practicable and as may be necessary in order to save them from any danger caused by the collision. . . . "

isting duty or from a special contract. 3. Success in whole or in part or that the service rendered contributed to such success." The Sabine, supra, 101 U.S. p. 384. See also, The Lowther Castle, 195 F. 604, 605 (D.N.J.1912); The Neshaminy, 228 F. 285, 289 (3rd Cir. 1915); The Emanuel Stavroudes, 23 F.2d 214, 216 (D.Md.1927); LaRue v. United Fruit Co., 181 F.2d 895, 898 (4th Cir. 1950); Continental Insurance Co. v. Clayton Hard Top Skiff, 367 F.2d 230, 235 (3rd Cir. 1966).

██ To constitute salvage of a vessel the distressed vessel must be in impending peril of the sea from which she is rescued by the voluntary efforts of others. There is no question that the Maumee Sun, while fully ladened with fuel oil, was in impending period of the sea. However, the issue is whether the American Pilot was acting voluntarily when she lashed the Maumee Sun to her side and transferred her out to sea. The value of such a service and the reasonable amount of such compensation to be awarded therefor are not to be estimated by the light of subsequent events, but of the facts which surrounded it at the time. The Neshaminy, supra, 228 F. p. 285; The Lowther Castle, supra, 195 F. p. 605. Voluntariness is a question of fact and the court believes that the evidence shows conclusively that the American Pilot was not acting voluntarily.

The record clearly discloses that the American Pilot, for its own safety, could not disengage from the Maumee Sun. Though subsequent evaluation disclosed that the American Pilot did not in fact sustain severe damage, the pilot aboard the American Pilot did not believe this to be true at the time of the collision. Peter Govostes, the pilot aboard the American Pilot, ascertained immediately after the collision that his ship could not safely disengage from the Maumee Sun. The safety of the American Pilot and her crew required that she stay imbedded in the Maumee Sun. Since the acts of the American Pilot were not voluntary, no salvage became due. Any reasonable man concerned for the safety of his ship and crew could make no other choice. Hence, the pilot aboard the American Pilot for that reason elected to keep his ship imbedded in the Maumee Sun.

Furthermore, 33 U.S.C. § 367 imposing a duty to stand by provides that in case of collision it shall be the duty of "the master or person in charge of each vessel" so far as possible without serious danger to his own vessel and those on her, to stand by until it appears that the other vessel does not "need further assistance." Accordingly, the American Pilot had a duty to render assistance to the distressed Maumee Sun unless to do so would expose the American Pilot to serious danger. See, The Trader, 129 F. 462 (D.D.C.1904). As the circumstances then surrounding the collision reveal, the American Pilot may have been in serious danger if she disengaged from the Maumee Sun. There is no doubt that there was a certain amount of danger as to any course of action that was available for the American Pilot to take. However, under the circumstances the safest maneuver for the American Pilot was to remain imbedded in the Maumee Sun. Therefore, the lashing of the Maumee Sun to the side of the American Pilot was not only in compliance with the statutory mandate to render assistance but also exposed the American Pilot to less danger than if she were to do otherwise.

██ Consequently, for the foregoing reasons, I conclude that none of the crew members of the American Pilot is entitled to a salvage award.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and of the parties.

2. The collision between the Maumee Sun and the American Pilot was solely the fault of the Maumee Sun. By reason of the facts herein contained, the petition of plaintiffs for exoneration from or limitation of liability is granted.

3. The claims of the members of the crew of the American Pilot set forth above for a salvage award are dismissed since:

(a) The American Pilot did not voluntarily render assistance to the distressed Maumee Sun. The safety of the American Pilot and her crew required that, immediately after the collision, the American Pilot remain imbedded in the Maumee Sun and to make no attempt at disengagement.

(b) The American Pilot was required by statute (33 U.S.C. § 367) to stand by and render assistance to the distressed Maumee Sun.

Settle judgment without costs promptly on notice pursuant hereto.