**ATLANTIS MARINE TOWING, INC., Plaintiff,**

v.

**THE M/V PRISCILLA, her engines, boats, tackle, apparel, furniture, and appurtenances, in rem; and the M/V Cure All, her engines, boats, tackle, apparel, furniture, and appurtenances, in rem, Defendants.**

No. 06–21209CIV.

United States District Court, S.D. Florida, Miami Division.

June 4, 2007.

---

Darren Wayne Friedman, Jeffrey Eric Foreman, Maltzman Foreman PA, Miami, FL, for Plaintiff.

Alice E. Solomon, Deorchis Hillenbrand Wiener & O'Brien LLP, Albert L. Frevola, Jr., Camille Elizabeth Blanton, Gordon Hargrove & James, Fort Lauderdale, FL, for Defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, The M/V *Priscilla*'s Motion for Summary Judgment [D.E. 47], filed on January 28, 2007; and Cross-Defendant, The M/V *Cure All*'s Motion for Summary Final Judgment as to Cross-Plaintiff, M/V *Priscilla* [D.E. 58], filed on March 2, 2007. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND [1]

On the evening of May 14, 2004, the M/V *Priscilla* ("the *Priscilla*"), a 63' Hatteras Sport fish motor yacht, was moored directly behind the M/V *Cure All* ("the *Cure All*"), a 57' Ferretti motor yacht, at Monty's Marina in Miami, Florida. (*See Compl.* [D.E. 1] at ¶¶ 4–6). The *Cure All* had an inflatable tender tied up at its stern, directly forward of the *Prscilla*'s bow pulpit. (*See id.* at ¶ 6). At some point during the evening, the *Cure All*'s tender caught fire. Employees of Plaintiff, Atlantis Marine Towing, Inc. ("Atlantis"), which maintains its place of business at Monty's Marina, approached and extinguished the fire on the tender using a water pump and fire hose. (*See id.*).

In its one-count Complaint, Atlantis seeks, under admiralty law, a salvage award against both the *Priscilla* and the *Cure All, in rem,* claiming that its voluntary rendering of services saved both the *Priscilla* and the *Cure All* from fire damage. (*See id.* at ¶¶ 7–10). In its Answer to the Complaint, the *Priscilla* also asserts a cross-claim for indemnification against the *Cure All*. (*See Priscilla Ans.* [D.E. 29] at Cross–Claim ¶¶ 8–10). In its cross-claim, the *Priscilla* asserts that, should it be held liable to Atlantis for salvage, the *Cure All* will be obligated to indemnify it because the *Cure All* is solely responsible for the fire that occurred on its tender. (*See id.*).

In the first motion before the Court, the *Priscilla*'s Motion for Summary Judgment [D.E. 47], the *Priscilla* seeks the entry of summary judgment on Atlantis' salvage claim, contending that (1) the law does not allow recovery for salvage from a vessel that received an incidental benefit from a salvor's services to another vessel; and (2) because the undisputed facts illustrate that the *Priscilla* was never in danger of being damaged by the fire, Atlantis is not entitled to a salvage award against the *Priscilla*. In the second motion, the *Cure All*'s Motion for Final Summary Judgment [D.E. 58], the *Cure All* seeks the entry of summary judgment on the *Priscilla*'s cross-claim, arguing that admiralty law does not allow for vicarious liability or indemnification under these facts.

### II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to

---

**1.** Unless otherwise noted, the facts set forth in this section are undisputed.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■ The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

## III. ANALYSIS

### A. The Law of Salvage

■ "Salvage is the reward or compensation allowed by the maritime law for service rendered in saving maritime property, at risk or in distress, by those under no legal obligation to render it, which results in benefit to the property ...." *The Neshaminy*, 228 F. 285, 288–89 (3d Cir. 1915). "The salvage award, which is unique to maritime and admiralty law, is not one of quantum meruit as compensation for work performed[, but] is a bounty given on grounds of public policy to encourage the rescue of life and property imperiled at sea and to foster maritime commerce." *Fine v. Rockwood*, 895 F.Supp. 306, 308 (S.D.Fla.1995).

■ To prove entitlement to a salvage award, a plaintiff must demonstrate three elements: (1) that a "maritime peril" existed "from the which the ship or other property could not have been rescued without the salvor's assistance;" (2) that the salvor acted voluntarily, *i.e.*, he or she was under no official or legal obligation to render the assistance; and (3) that the salvor was successful in saving or helping to save at

least part of the property at risk. *Klein v. Unidentified Wrecked and Abandoned Sailing Vessel*, 758 F.2d 1511, 1515 (11th Cir.1985) (citing G. Gilmore & C. Black, Jr., The Law of Admiralty 534–35 (1975)). A "maritime peril" (or "marine peril") exists where a ship is "in a situation that might expose her to loss or destruction." *Fine*, 895 F.Supp. at 309. No peril exists where "there is no 'reasonable apprehension for her safety in the future if left to her own unaided efforts.'" *Id.* (quoting *The J.C. Pfluger*, 109 F. 93, 95–96 (N.D.Cal.1901)).

## B. The *Priscilla*'s Motion for Summary Judgment

In its Motion, the *Priscilla* raises two arguments that it contends entitle it to summary judgment: (1) that as a matter of law, a salvor is not entitled to a salvage award from a vessel for putting out a fire on a neighboring vessel; and (2) that even if the law would allow recovery in a such a circumstance, Atlantis is not entitled to such an award in this case because the undisputed material facts illustrate that the *Priscilla* was never in maritime peril.[2] The undersigned addresses these arguments in turn.

### 1. *Salvage Awards for Extinguishing Fires on Neighboring Vessels*

■ The *Priscilla* cites a number of cases in support of its contention that, as a matter of law, a salvor is not entitled to a salvage award from a vessel as a result of its extinguishing a fire on a neighboring vessel. In *Merritt & Chapman Derrick & Wrecking Co. v. United States*, a salvor brought a salvage claim against a vessel after extinguishing a fire on the pier where the vessel was docked. 274 U.S. 611, 612, 47 S.Ct. 663, 71 L.Ed. 1232 (1927). In holding that the salvor was not entitled to an award, the Supreme Court stated:

> [t]here is no claim that [the salvor's] fireboats played any water on th[e] vessel or did anything to extinguish fire thereon or to give her any assistance other than that involved in fighting the fire on and about [the pier]. The distance between the [vessel] and the fire is not stated, and there is nothing to indicate that she did not have adequate protection from other sources. Indeed, the circumstances disclosed ... tend to show that she did not need any assistance from [the salvor].

*Id.* at 613, 47 S.Ct. 663. Citing a number of past cases, the Court went on to note that "whatever the aid or benefit resulting to [the vessel], it was incidental and indirect for which in the absence of request for or acceptance of the service, a claim for salvage cannot be sustained." *Id.*

In *The City of Atlanta* number of tugboats worked to extinguish a fire on a vessel, then towed the vessel away from a neighboring ship. 56 F. 252, 253–54 (S.D.N.Y.1893). The tugs then sought a salvage award from the neighboring ship, asserting that they had saved it from fire damage by towing away the burning vessel. *See id.* at 254. In holding that the tugs were not entitled to a salvage award from the neighboring ship, the court noted that:

> [n]one of the tugs were employed by the [neighboring vessel]. They did nothing directly to her, or upon her. They did

---

**2.** The *Priscilla* also asserts that Atlantis cannot premise its demand for a salvage award from the *Cure All* upon its salvaging the *Priscilla* and, therefore, saving the *Cure All* from liability to the *Priscilla*. (*See Mot.* [D.E. 47] at 7–9). The Court need not address this argument because Atlantis states in its Response that its claim against the *Cure All* is not premised upon any potential liability of the *Cure All* to the *Priscilla*. (*See Resp.* [D.E. 49] at 6 n. 2).

not enter into her service, but into the service of the [burning vessel].... The removal was a mere incident of their mode of conducting the salvage service to the [burning vessel], and the advantage to the [neighboring vessel] was only an indirect benefit; not a direct service to her.

*Id.* The court also noted that it had not been referred "to any case in which one vessel has been charged with payment of salvage for an indirect advantage derived from the rendering of a salvage service to another vessel." *Id.* at 255.

Finally, in *The San Cristobal,* the court affirmed the trial court's holding that a salvor was not entitled to a salvage award against a vessel for putting out a fire in a structure 75 feet from the vessel, which was in dry dock. 230 F. 599, 599 (5th Cir.1916).[3] The court premised its decision upon the fact that the benefit conferred upon the vessel was incidental to services rendered to another vessel. *See id.* at 600.

The *Priscilla* contends that these cases, taken together, establish that a salvor is not entitled to a salvage award against vessels that incidentally benefitted from services rendered by the salvor to another vessel. In its Response, Atlantis relies on one case, *The Neshaminy,* in which the court held that tugs were entitled to a salvage award from a barge where they worked to extinguish a fire upon a floating dry dock holding the barge. 228 F. 285, 289 (3d Cir.1915). In so holding, the court distinguished *The City of Atlanta* and *The San Cristobal,* finding that in those cases, the courts' denial of salvage awards was premised upon their finding that no services were actually rendered by the salvors to the subject ships (because the services

of the salvors were actually being rendered to other ships and/or the docks themselves). *See id.* at 289. The court held that in that particular case, services *were* rendered directly to the barge because the purpose of fighting the fire on the dock was to save the barge. *See id.*

The court also explicitly noted that the barge master's acceptance of firefighting services (manifested by his choosing to keep the dry dock afloat and rely upon the firefighting to protect the barge) was evidence that services had been directly rendered to the barge. *See id.* The court concluded that a salvage award was warranted because "[t]he protection afforded and relied upon by the barge was not an advantage indirectly or incidentally arising out of a service directly rendered the dock, but was a direct protection which, when accepted and relied upon, amounted to a direct service to the barge." *Id.*

The cases cited by the parties are not inconsistent with each other. Taken together, they stand for the proposition that a claim for salvage will not lie when asserted against a vessel that gained an incidental benefit from a salvor's services to another vessel. The question, then, is whether the benefit, if any, conferred upon the *Priscilla* by the Atlantis' employees was incidental to services rendered to the *Cure All* and/or the *Cure All's* tender, or was rendered directly to the *Priscilla.* The resolution of this question requires factual determinations that may be made only after trial. The *Priscilla* is therefore not entitled to summary judgment on the basis of this line of cases.

**2. *Whether a Marine Peril Existed***

█ The *Priscilla* also asserts in its Motion that it is entitled to the entry of

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

summary judgment on Atlantis' salvage claim because the undisputed material facts illustrate that the *Priscilla* was never exposed to a "maritime peril." In support of this argument, the *Priscilla* contends that in addition to the background facts set forth above, the following material facts are undisputed:

(1) The fire on board the *Cure All*'s tender was small and reached only to several feet below and away from the Priscilla's bow pulpit. (*See Priscilla Mot.* [D.E. 47] at ¶ 3; Ex. 1).

(2) No sparks or floating embers were released from the fire. (*See id.*).

(3) The Priscilla did not sustain any damage whatsoever from the fire, not even soot stains, burn marks from floating embers or charring/discoloration from the heat of the fire. (*See id.* at ¶ 4; *Aff. of Joel Sparrow* [D.E. 47; Ex. 2] at ¶ 5).

(4) There is no evidence that the fire spread or was in danger of spreading to the *Priscilla*. (*See Mot.* at ¶ 4; *Sparrow Aff.* at ¶ 4).[4]

In its Response to the Motion, Atlantis assers that disputed issues of material fact exist concerning the danger the fire posed to the *Priscilla*. Specifically, Atlantis submits the affidavits of two putative expert witnesses. Michael Linscott, a watercraft fire investigator, opines, *inter alia*, that the fire on the *Cure All*'s tender could have spread to other boats and to the dock, that the *Priscilla* could have caught fire as a result of flaming embers, and that

the *Priscilla* sustained thermal damage to its gel coat that indicates that, had the fire continued to burn, the temperatures in the thermal column rising from the fire would have been sufficiently high to ignite the combustible hull of the *Priscilla*. (*See Resp.* [D.E. 49] at 2–3; *Aff. of Michael Linscott* [D.E. 49; Ex. B] at ¶¶ 6–9).[5] Atlantis also asserts that the photograph submitted by the *Priscilla* in support of its Motion demonstrates how close the fire was to the *Priscilla*'s bow, indicating that the *Priscilla* was exposed to a maritime peril. (*See Resp.* at 4).

In its Reply, the *Priscilla* challenges the admissibility of Mr. Linscott's expert testimony on the basis that his opinions are not based on personal knowledge or his own inspection of the vessels, and that he signed his affidavit only after reviewing photographs and discussing the case with Atlantis' attorney. (*See Reply* [D.E. 91] at 5–10). The *Priscilla* also challenges Mr. Linscott's testimony on the basis that it is speculative and conclusory and will not assist the trier of fact. (*See id.*). The *Priscilla* has also separately filed a Motion *in Limine* to exclude Mr. Linscott's testimony [D.E. 109], which is scheduled to be heard by the Court at calendar call on June 5, 2007. The undersigned therefore declines to address the issue of the admissibility of Mr. Linscott's opinions in this Order.

The existence of marine peril is an issue of fact for the fact finder. *See Evanow v. M/V Neptune*, 163 F.3d 1108, 1114 (9th

---

**4.** In his affidavit, Mr. Sparrow also opines that "there was a hole in the side tube of the tender as a result of the fire and the tender inevitably would have taken on water and sunk had no action been taken by Atlantis Marine Towing." (*Sparrow Aff.* at ¶ 6). Atlantis challenges this contention in its Response to the *Priscilla*'s Motion, but because the *Priscilla* did not include Mr. Sparrow's opinion in its Statement of Uncontroverted

Material Facts, the undersigned need not address the issue in resolving the *Priscilla*'s Motion.

**5.** Atlantis' second putative expert witness, Robert Connell, opines only about whether the tender would have sunk as a result of the fire. (*See Resp.* at 2; *Aff. of Robert Connell* [D.E. 49; Ex. A] at ¶ 6).

Cir.1998). The issue, then, is whether a genuine issue of material fact exists regarding whether the *Priscilla* was exposed to a marine peril as a result of the fire aboard the *Cure All*'s tender. Based upon the photographs submitted by the parties and upon the potential expert witness testimony the parties intend to introduce at trial, the undersigned finds that summary judgment on this issue is not appropriate.

## C. The *Cure All*'s Motion for Summary Judgment on the *Priscilla*'s Cross–Claim

■ In its Motion, the *Cure All* moves for summary judgment on *Priscilla*'s cross-claim against it. In its cross-claim, the *Priscilla* seeks indemnification from the *Cure All* for any damages the *Priscilla* is found to owe Atlantis, asserting that the *Priscilla*'s liability, if any is found, will be "only vicarious, constructive, derivative or technical" and "solely because of the actions of [the] *Cure All*." (*See Priscilla Ans.* [D.E. 17] at Cross–Claim ¶¶ 8–9). The parties appear to agree that such an indemnity claim will lie in a salvage case only where there is a contractual relationship between the parties or where there is an allegation and showing of fault, that is; that the party seeking indemnity was exposed to potential salvage liability through the fault of the third party against whom it seeks indemnification. *See, e.g., Tice Towing Line v. James McWilliams Blue Line,* 57 F.2d 183, 184 (2d Cir.1932) (holding that indemnification in a salvage case is premised upon a tort theory requiring a showing of fault).

The *Cure All* asserts that the *Priscilla* has neither alleged nor shown that the *Cure All* was in any way at fault for the fire aboard its tender, (*See Cure All Mot.* [D.E. 58] at 3–4). The *Priscilla* claims, however, that its cross-claim against the

*Cure All* is premised upon a theory that the *Cure All* negligently left the keys in the tender's ignition and that someone, in an attempt to steal the tender, turned the ignition key, causing a backfire that resulted in the fire on the tender. (*See Resp.* [D.E. 71] at 2–11). In support of this theory, the *Priscilla* sets forth the following evidence from the record:

(1) Photographs taken after the fire illustrate that at the time of the fire, the keys were in the tender's ignition. (*See Resp.* at 3).

(2) Burt Korpela, an employee of Atlantis, testified at deposition that he believed the fire was caused by a backfire during a theft attempt because:

> just because of living in the marina for so long, you know, we get what we call fisherman, unquote, that come down to fish in the marina, and we've had several boats stolen in the past . . . . I've been in confrontations with people that I've caught trying to steal dinghies and boats. It's kind of just common knowledge of being there for so long. This particular boat, the way it was tied up in between [ . . . . ] It was a very, very nice hot little, small little boat. . . .

(*Id.* at 3–4; *Korpela Dep.* [D.E. 71; Ex. 1] at 94–97). Mr. Korpela further testified that thieves were able to gain access to Monty's Marina because:

> [t]he gates have a very small fantail that comes off the sides of them, and on pier 1, pier A, it's notorious that there's a boat by the name of Reel Time that ties up there, and he ties his boat all the way up under the dock, transom, too, so you can step out off his boat. . . . [A]t that particular time, it was questionable if the gate would lock at all, if it did.

(*Korpela Dep.* at 47–49).

(3) Vincent Morenza, another employee of Atlantis, testified at deposition that he

heard a backfire, then saw a person leaving the vicinity of the vessels:

Q: Did you see any person ever running away from the scene of the tender fire?

A: Yes.

Q: You did?

A: I'm not sure. I mean, we are getting ready in the morning, there was a shadow on the dock.

Q: Near the vicinity of where this fire was?

A: Yes.

Q: And then what other observations did you make—by shadow, you mean something that looked like the form of a person?

A: Yes.

Q: What did you see the person do?

A: They were just walking away in a fast pace.

.    .    .    .    .

Q: How long after you observed that person did you see any sign that there was a fire?

A: I'm not sure.

.    .    .    .    .

Q: So how long a period of time are we talking about?

A: However long it takes me to nap. I mean, it could have been half hour, 45 minutes.

Q: So you saw somebody walking away quickly, and then 45 minutes later you say is when you noticed the fire?

A: Yes.

Q: Do you make any connection in your mind between the person walking away and the fire?

A: Could have been.

Q: You don't know?

A: Correct.

.    .    .    .    .

Q: Did you conclude in your mind that the person had anything to do with the [backfire] noise that you had heard?

A: In my mind I didn't think he had anything to do with it.

.    .    .    .    .

Q: And as you sit here today, you are not making any connection between the noise and the person.

A: There could have been a connection.

Q: You just don't know.

A: I don't know.

(*Resp.* at 6–10; *Morenza Dep.* [D.E. 71; Ex. 3] at 63–69).

Based upon this testimony, the *Priscilla* concludes that there is a genuine issue of material fact regarding whether the *Cure All* adequately secured the tender and its key and whether the *Cure All*'s personnel were negligent in leaving the tender's keys accessible to thieves at a marina known to have frequent thefts of small vessels. (*See Resp.* at 11).

In order to defeat summary judgment, a non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case ...." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. In order to prevail on its cross-claim and establish that the *Cure All*'s negligence resulted in the *Priscilla*'s potential salvage liability, the *Priscilla* would have to show at trial that: (1) the *Cure All* had a duty to prevent damage to the *Priscilla*; (2) the *Cure All* breached that duty; and (3) that the *Cure All*'s breach proximately caused damage to the *Priscilla*. *See Scruggs v. United States*, 959 F.Supp. 1537, 1544 (S.D.Fla.1997).

Based upon the evidence set forth above, the *Priscilla* will be unable to sustain its burden of proof on its negligence claim at

trial. Even assuming that the *Cure All* had a duty to safeguard the tender from potential thieves and that its leaving the key in the ignition of the tender constituted a breach of that duty, the *Priscilla* has failed to set forth any actual evidence that that breach proximately caused damages to the *Priscilla.* The only "evidence" that an attempted theft caused the backfire and subsequent fire is that one witness may have seen a person walking away quickly from the dock within an hour of the fire's outbreak. Even if the undersigned, as fact-finder, were to credit that witness and agree that a person was seen walking quickly away from the dock, the *Priscilla*'s theory appears to be premised almost wholly on speculation and conjecture concerning negligence by the *Cure All.*

There is no genuine issue of material fact regarding the *Cure All*'s negligence. Accordingly, the *Cure All* is entitled to summary judgment on the *Priscilla*'s cross-claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

(1) The *Priscilla*'s Motion for Summary Judgment [D.E. 47] is **DENIED.**

(2) The *Cure All*'s Motion for Summary Final Judgment as to Cross–Plaintiff, M/V *Priscilla* [D.E. 58] is **GRANTED.**